*RECOMMENDED FOR FULL-TEXT PUBLICATION*
Pursuant to Sixth Circuit Rule 206

ELECTRONIC CITATION: 2001 FED App. 0006P (6th Cir.)
File Name: 01a0006p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

―――――――――

UNITED STATES OF AMERICA,
     *Plaintiff-Appellee,*

    *v.*

WISE UKOMADU,
     *Defendant-Appellant.*

No. 99-1809

Appeal from the United States District Court
for the Eastern District of Michigan at Detroit.
No. 97-81270—Paul D. Borman, District Judge.

Argued: December 8, 2000

Decided and Filed: January 5, 2001

Before: MERRITT, KENNEDY, and GILMAN, Circuit
Judges.

―――――――――

**COUNSEL**

**ARGUED:** Joan Ellerbusch Morgan, Troy, Michigan, for
Appellant. Jennifer J. Peregord, ASSISTANT U.S.
ATTORNEY, Detroit, Michigan, for Appellee. **ON BRIEF:**
Joan Ellerbusch Morgan, Troy, Michigan, for Appellant.
Jennifer J. Peregord, ASSISTANT U.S. ATTORNEY,
Detroit, Michigan, for Appellee.

1

--------------------

## OPINION

--------------------

KENNEDY, Circuit Judge. Defendant Wise Ukomadu was convicted of possession with intent to distribute heroin. Defendant brings this direct appeal alleging (1) that the district court erred in denying defendant's motion to suppress evidence, (2) that the district court abused its discretion in ordering that defendant pay fines, and (3) that the district court erred in determining the amount of heroin relevant for the sentencing calculation. For the reasons set forth below, we AFFIRM the judgment of the district court on all grounds.

### I.

On October 17, 1997, a customs official at Chicago's O'Hare Airport intercepted a suspicious package that had been express mailed from Thailand and was addressed to Larry Cole at a Popeye's Chicken restaurant in Detroit. X-rays showed that the package included kitchen items and cooking pots. The pots appeared to have unusually thick bottoms. Customs officials opened the package and, after breaking open the bottom of the pots with a hammer and chisel, found 293.3 grams of heroin. The officials removed most of the heroin, leaving approximately six grams in the package. The package was then reassembled and forwarded to Bobby Wade, a postal inspector in Detroit. Wade obtained a court order to plant a beeper in the package to go off when the package was opened. Prior to rewrapping it for a controlled delivery, Wade installed the beeper and sprayed the inside of the parcel with a substance that produces a fluorescent glow when objects that have touched it are placed under black light. Wade obtained an anticipatory search warrant for the Popeye's restaurant to which the package was addressed. Wade, dressed as a mail carrier, delivered the package to the restaurant at approximately 2:00 p.m. on October 21, 1997.

Cynthia Brown, assistant manager at the restaurant, signed for the package and put it in a back room. Defendant Ukomadu, the restaurant manager, was not at the restaurant when the package was delivered. He arrived later in a Toyota Land Cruiser and departed with the package at approximately 5:15 p.m.[1] Ukomadu drove to a residence on Brace Street in Detroit, later identified as the home of Moore Wachuku. Ukomadu entered the residence, leaving the package in the car. Agents observed Wachuku exit the house, move a car into the street, set the alarm on defendant's Land Crusier, re-enter the house, and then leave approximately ten minutes later. Kimberly Williams arrived and entered the house at approximately 7:30 p.m. At approximately 8:50 p.m., Ukomadu retrieved the package from his car and brought it into the house.

At that time, Agent Genrich, who had conducted surveillance of the Land Cruiser from Popeye's to Brace Street, contacted Agent Hayes, who was en route to prepare an affidavit for a telephonic search warrant for the Brace Street residence, to notify him that Ukomadu had taken the package into the house. While the agents were talking, the beeper went off, indicating that the package had been opened inside the house. The agents who were watching the Brace Street house entered the house and conducted a security sweep to locate the package and prevent the destruction of the drugs. Agent Hayes then contacted a magistrate judge and obtained a telephonic search warrant for the Brace Street house. Before the warrant was executed, a black light to detect phosphorescent powder was used on the people in the house. Traces of the powder were found on Ukomadu's hand and clothing and on Christian Ikenyi's hands, and both were arrested. The package, its contents, and documents showing that Ukomadu lived in a room at the residence were eventually seized pursuant to the warrant.

---

[1] The search warrant for the Popeye's restaurant was never executed because the package was not opened there.

Defendant Ukomadu was indicted on November 5, 1997 on charges of possession of heroin with intent to distribute (Count 1) and unlawful importation of heroin (Count 2). Before trial, defendant moved to suppress the heroin seized in the manner described above, on the grounds that no exigent circumstances existed at the time of the search and that agents should have obtained an anticipatory search warrant for the Brace Street home. The district court denied that motion, stating that the agents had an objectively reasonable belief that the narcotics would be destroyed once the package was opened, and that the agents actions prior to the warrant did not constitute a search. On August 4, 1998, a jury convicted defendant of possession with intent to distribute heroin under count one of the indictment. Based on the 293.3 grams of heroin initially found in the package, defendant was assigned a base offense level of 26 under the Sentencing Guidelines. He was sentenced to seventy-two months in prison followed by a four year term of supervised release, and he was ordered to pay $150,032.24 in fines and to cover the costs of incarceration. Defendant now brings this appeal.

## II.

## A.

Defendant first argues that the district court erred in denying his motion to suppress the heroin seized by agents at the Brace Street residence. Defendant alleges that the initial entry and the arrest of defendant were warrantless and illegal and that, as a result, any evidence seized later following the issuance of the telephonic search warrant should have been suppressed as well. In addition, defendant contests the district court's conclusion that the examination of defendant's hands did not constitute an impermissible search of his person.

A district court's findings of fact are reviewed only for clear error. The district court's conclusion that facts constitute exigent circumstances for Fourth Amendment purposes is reviewed de novo. *United States v. Rohrig*, 98 F.3d 1506, 1511 (6th Cir. 1996); *United States v. Straughter*, 950 F.2d 1223, 1230 (6th Cir. 1991).

quoted above: a "jointly undertaken criminal activity" can exist "whether or not charged as a conspiracy." Defendant would clearly have received the entire 293 grams contained in the original package but for the fortuitous intervention of the customs officials. Defendant was personally involved as a participant who was the intended recipient of the package and who indeed did take delivery of the package. Thus, he meets the requirements of § 1B1.3, application note 2, and is responsible for the entire quantity of heroin.

In addition, the current policy of drug enforcement officials to remove the majority of illegal drugs from packages in these investigations is in the public interest. The court should not force officials to choose between securing appropriately significant sentences for captured drug offenders and alternatively reducing the quantity of illegal drugs in the stream of commerce. It is better policy to permit officials to remove dangerous drugs from the market without jeopardizing significant sentences for offenders where it is clear that the original amount of drugs was within the scope of activity that the defendant jointly undertook or the activity in which he was directly involved, regardless of whether conspiracy was charged.

Thus, we affirm the district court's calculation of the sentence based on the full 293.3 grams of heroin originally present in the package when it was seized.

## III.

For the reasons stated above, we AFFIRM the judgment of the district court.

in the case of a jointly undertaken criminal activity, the appropriate offense level shall be determined on the basis of "all acts and omissions committed . . . by the defendant; and . . . all reasonably foreseeable acts and omissions of others in furtherance of the jointly undertaken criminal activity." Application note 2 to § 1B1.3 explains that:

> A "jointly undertaken criminal activity" is a criminal plan, scheme, endeavor, or enterprise undertaken by the defendant in concert with others, whether or not charged as a conspiracy.
> In the case of a jointly undertaken criminal activity, subsection (a)(1)(B) provides that a defendant is accountable for the conduct (acts and omissions) of others that was both:
> (i) in furtherance of the jointly undertaken criminal activity; and
> (ii) reasonably foreseeable in connection with that criminal activity.
> . . .
> With respect to offenses involving contraband (including controlled substances), the defendant is accountable for all quantities of contraband with which he was directly involved and, in the case of a jointly undertaken criminal activity, all reasonably foreseeable quantities of contraband that were within the scope of the criminal activity that he jointly undertook.

The district court concluded that, under this standard, the entire quantity contained in the package as originally mailed to the defendant was properly attributable to him.

This court reviews the district court's determination of the quantity of drugs attributable to defendant for sentencing purposes for clear error. *United States v. Mahaffey*, 53 F.3d 128, 131 (6th Cir. 1995). Defendant argues that, under U.S.S.G. § 2D1.1, application note 12, it is not appropriate to consider the full 293.3 grams because defendant was not charged with conspiracy. That application note, however, specifically refers to § 1B1.3, which includes the language

Warrantless searches are presumptively unreasonable under the Fourth Amendment. *Payton v. New York*, 455 U.S. 573, 586 (1980). That presumption can be rebutted, however, by the existence of probable cause and exigent circumstances. The Supreme Court has held that "[w]here there are exigent circumstances in which police action literally must be 'now or never' to preserve the evidence of the crime, it is reasonable to permit action without prior judicial evaluation." *Roaden v. Kentucky*, 413 U.S. 496, 505 (1973).

> The law is well-settled that a warrantless entry will be sustained when the circumstances then extant were such as to lead a person of reasonable caution to conclude that evidence of a federal crime would probably be found on the premises and that such evidence would probably be destroyed within the time necessary to obtain a search warrant.

*United States v. Radka*, 904 F.2d 357, 362 (6th Cir. 1990). This court has adopted a two-prong standard for evaluating a warrantless entry made to prevent the imminent destruction of evidence:

> [A] police officer can show an objectively reasonable belief that contraband is being, or will be, destroyed within a residence if he can demonstrate: 1) a reasonable belief that third parties are inside the dwelling; and 2) a reasonable belief that these third parties may soon become aware the police are on their trail, so that the destruction of evidence would be in order.

*United States v. Sangineto-Miranda*, 859 F.2d 1501, 1512 (6th Cir. 1988). The police must have an objectively reasonable basis for their belief that evidence will be lost or destroyed—the "mere possibility of the loss or destruction of evidence is an insufficient basis for the warrantless entry of a house to prevent the destruction of evidence." *Radka*, 904 F.2d at 363.

In the present case, the district court explicitly addressed the correct question of whether or not the agents had an

objectively reasonable belief that the destruction of the drugs was imminent. The district court concluded at the hearing that:

> [T]he facts here show that the agents had an objectively reasonable belief that the destruction of narcotics would be imminent once the package was open, the . . . wiring . . . and the fact that most of the drugs would not be there, would let them know that the package had been tampered [with], and likely set up for an arrest, and they would be likely to destroy the narcotics in there so the narcotics would not be identified to the particular individuals. The record I think shows the evidence would be destroyed within the time necessary to obtain a search warrant, which would be an hour.
>
> . . .
>
> There are cases where they say you should have gotten an anticipatory search warrant, and they did where the package was addressed, Popeye's, and when the package was removed, it started traveling. They checked on the address on the car to Pingree. The drugs end up on Brace Street. How certain were they the drugs would stay?
>
> . . .
>
> So I think the police behavior in getting an anticipatory warrant for the Popeye's Chicken was appropriate, and once the package left there, they tried to follow it, and protected the integrity of the package, which contained the signal as well as drugs, and when it went in there, they waited, and people were going in and out, and they acted to try to get an anticipatory search warrant, but at 8:54 pm the defendant came out and picked up the package and the beeper went off, and they had gotten the warrant within an hour after that. . . .
>
> [T]he facts do show that objectivity [sic] reasonable belief of destruction of narcotics was imminent, particularly when they saw five grams instead of 290, and the record establishes that the[y] would be destroyed within the time necessary to obtain the search warrant.

*v. Tosca*, 18 F.3d 1352, 1354 (6th Cir. 1994). In the present case, defendant failed to present any evidence at sentencing to support his assertion that a friend may have taken over the car payments. In addition, the government presented evidence on different occasions of defendant's ability to earn a substantial income and of significant assets held by defendant. The district court did not abuse its discretion in concluding that defendant failed to meet his burden of showing that he was unable to pay the fine and costs imposed. We affirm the district court's imposition of the fine and costs.

### C.

Lastly, defendant objects to the district court's determination of the amount of drugs used in calculating his sentence. Upon first intercepting the package containing the drugs, customs officials found 293.3 grams of heroin. The officials removed most of the heroin from the package, however, leaving only approximately six grams in the package that eventually was possessed by defendant. Defendant was convicted of possession with intent to distribute heroin and acquitted of importation of heroin. The district court determined that the full 293.3 grams of heroin was the appropriate amount to use in sentencing defendant, which resulted in a base offense level of 26, with a sentencing range of sixty-three to seventy-eight months. Defendant argues that because the package contained only six grams at the time it was possessed by defendant, six grams is the appropriate amount to use for sentencing. The resulting base offense level for six grams would be level 14, with a guidelines range of fifteen to twenty-one months in prison.

Defendant objected to the quantity determination below, but the district court agreed with the probation department's conclusion that the 293.3 grams of heroin were "within the scope of the criminal activity that the defendant jointly undertook" under U.S.S.G. § 1B1.3, application note 2. Section 1B1.3 defines the relevant conduct that may be considered by a sentencing judge in determining the appropriate guideline range. Section 1B1.3(a)(1) states that

and costs imposed by the court." (Appellant's Br. 24.)   In sum, defendant alleges that the district court did not properly evaluate his ability to pay.

In response, the government first argues that defendant waived this argument by failing to object to the imposition of the fine and costs at trial.  The government points out that the defendant was on notice of the dispute as to the ownership of the Land Cruiser as of the filing of the government's motion for reconsideration three months prior to sentencing.[3]   In addition, the government objected at sentencing to the omission of the vehicle as an asset of defendant in the PSR. Defendant raised no objection to the fine and costs, however. A defendant waives the right to appeal an application of the Sentencing Guidelines when he fails to object in the trial court. This court has held that "a defendant must first present the claim in the district court before we can entertain the alleged misapplication of the Guidelines on appeal." *United States v. Nagi*, 947 F.2d 211, 213 (6th Cir. 1991). In *United States v. Tosca*, 18 F.3d 1352 (6th Cir. 1994), this court concluded that "the defendant waived any right to appeal the imposition of a fine because he failed to object at the trial court level." *Id.* at 1355.

In addition, even if defendant had not waived the claim, he has not shown that the district court abused its discretion by imposing the fine and costs.  The Sentencing Guidelines mandate imposition of a fine within the applicable range unless the defendant establishes that he is unable to pay and is not likely to become able to pay.  U.S.S.G. §§ 5E1.2(a) & (f).  The guidelines further direct that in determining the amount of the fine, one factor the court must consider is "the expected costs to the government of any . . . term of imprisonment and term of supervised release imposed." U.S.S.G. § 5E1.2(d)(7).  It is the defendant's burden to establish that he cannot and will not be able, even under an installment schedule, to pay the assessed fine.  *United States*

---

[3]The district judge ultimately declined to rule on this motion.

(Tr. of Hearing, J.A. 228-30A).   The record supports the district court's conclusions.   Based on their continuous surveillance of defendant, his car, and the Brace Street home, agents clearly had reason to know that multiple people were in the home, eventually with the suspect package. In addition, it was also objectively reasonable to believe that the modifications made to the package by customs and drug officials would immediately indicate to the people in the house that the package had been tampered with for the purpose of making arrests.

Although defendant relies on this court's decision in *United States v. Radka*, 904 F.2d 357 (6th Cir. 1990), to support his position, the district court correctly pointed out that the facts of that case are distinguishable from the facts here. In *Radka*, the facts failed to show that the agents had an objectively reasonable belief that destruction of evidence was imminent. In particular, the court held that the enforcement activities that had occurred were so far from the house and not visible to the occupants of the house that there was no reasonable police concern that the activity would alert the occupants of the house to the ongoing investigation.  *Id.* at 362.   Here, however, the district court correctly concluded that the government had met its burden of demonstrating that several potentially culpable people were inside the house when the package was opened and that the easy observation of the beeper trip wires, as well as the removal of almost all of the drugs from the package, led the agents to reasonably conclude that the destruction of incriminating evidence was imminent.

Defendant also challenges the district court's conclusion that the examination of his hands and clothing under the black light was not an illegal search under the Fourth Amendment. Defendant alleges that, at a minimum, the results of that search should have been suppressed. Defendant presents no controlling authority, however, to contradict this court's decision in *United States v. Richardson*, 388 F.2d 842 (6th Cir. 1968), holding that "[w]e do not regard the examination of appellant's hands under the ultraviolet light as a search within the meaning of the Fourth Amendment." *Id.* at 845

(citing *Schmerber v. State of California*, 384 U.S. 757 (1966)).

The district court correctly concluded that the warrantless search was justified by exigent circumstances because the agents had an objectively reasonable belief that there were people in the Brace Street residence and an objectively reasonable fear that the drugs would be destroyed imminently. We affirm the judgment of the district court denying defendants motion to suppress.

**B.**

Secondly, defendant alleges that he lacks the ability to pay the fine and costs of incarceration imposed on him by the district court. Defendant claims that the court abused its discretion in ordering defendant to pay the fine and costs.

Conflicting evidence was presented regarding defendant's financial status. Prior to sentencing, defendant filed a motion seeking trial transcripts at public expense. The government objected, offering evidence to support their objection. First, the government noted that defendant's October 1998 affidavit in support of his request for transcripts (J.A. 82a) differed significantly from the affidavit he filed a year earlier in support of a request for appointed counsel (J.A. 28). Specifically, the affidavit in support of the request for transcripts showed much lower income and asset value and much higher debt. Secondly, the government stated that while under indictment, defendant bought a $75,000 house in Detroit. The mortgage application, filed in January 1998, claimed a substantially larger income from different sources and substantially greater assets than either affidavit. The government presented evidence that defendant paid almost $15,000 in cash for the home. Lastly, the government presented evidence of an average balance in defendant's bank accounts for the last two months of 1997 of over $11,000. At a hearing before the district court, defendant stated that his Land Cruiser had been repossessed for non-payment prior to his October 1998 affidavit, thus accounting for the difference between the stated value of his vehicles in January ($70,000)

and October ($4,000) of 1998. As a result of that testimony, defendant's motion for trial transcripts was granted.

The government, however, presented evidence at defendant's sentencing hearing that defendant's Land Cruiser was still in defendant's name and that between the time of his incarceration in August 1998 and March 1999, over $4,500 in monthly payments were made on the car, including a payment of $1,384 submitted one week after the grant of his motion for trial transcripts. (J.A. 103-10.) The Presentence Report (PSR) showed defendant as having no cash and failed to list the Land Cruiser as an asset. The government objected to the PSR's findings at sentencing, relying in particular on the evidence of the Land Cruiser.

The district court ultimately included as part of defendant's sentence a fine of $12,500, which was the lowest value in the applicable range of $12,500 to $2,000,000, and payment of the costs of incarceration.[2] The district court stated that it reached this decision "based on the finding that the vehicle has not been repossessed, [as] was told to the court, and [the existence of] some assets that are being utilized to pay for the vehicle which is in the defendant's name." (Sentencing Hr'g, J.A. 303.) Defendant raised no objection to the imposition of the fine and costs of incarceration at the time of sentencing.

Defendant alleges now that the imposition of the fines and costs on defendant was an abuse of discretion by the district judge. Defendant relies on the fact that the district court previously granted his motion for trial transcripts and the fact that the PSR indicated that defendant had no income and limited assets. Defendant also alleges that someone else may have been making the payments on the Land Cruiser and that "the district court's implicit conclusion that Mr. Ukomadu must have the ability to pay because *someone* was making the Toyota payments, and there must be assets from *somewhere* . . . does not mean that Mr. Ukomadu was able to pay the fine

---

[2]Under the judgment, defendant is responsible for a total payment of $150,032.24.