RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit Rule 206
ELECTRONIC CITATION: 2003 FED App. 0448P (6th Cir.)
File Name: 03a0448p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

---

UNITED STATES OF AMERICA,
*Plaintiff-Appellee,*

*v.*

No. 02-5181

RALPH VASQUEZ,
*Defendant-Appellant.*

---

Appeal from the United States District Court
for the Eastern District of Tennessee at Chattanooga.
No. 01-00061—Curtis L. Collier, District Judge.

Argued: September 9, 2003

Decided and Filed: December 19, 2003

Before: MOORE and GILMAN, Circuit Judges; MILLS, District Judge.[*]

---

## COUNSEL

**ARGUED:** John Allen Brooks, Chattanooga, Tennessee, for Appellant. Perry H. Piper, ASSISTANT UNITED STATES

---

[*] The Honorable Richard Mills, United States District Judge for the Central District of Illinois, sitting by designation.

ATTORNEY, Chattanooga, Tennessee, for Appellee. **ON BRIEF:** John Allen Brooks, Chattanooga, Tennessee, for Appellant. Paul W. Laymon, Jr., ASSISTANT UNITED STATES ATTORNEY, Chattanooga, Tennessee, for Appellee.

---

## OPINION

---

KAREN NELSON MOORE, Circuit Judge. The Defendant-Appellant, Ralph Vasquez ("Vasquez"), appeals the district court's determination of his base offense level under United States Sentencing Guideline ("U.S.S.G.") § 2D1.1(c)(4) for conspiring to distribute 1.3608 kilograms (three pounds) of a mixture or substance containing a detectable amount of methamphetamine, in violation of 21 U.S.C. §§ 846 and 841(b)(1)(B). On appeal, Vasquez argues that the district court erred in determining his base offense level due to that court's misapplication of U.S.S.G. § 2D1.1, Application Note 12 ("Note 12"), regarding the quantity of controlled substance to be used in determining the offense level for an offense involving an agreement to sell a controlled substance. Vasquez argues that under Note 12, the additional two pounds of methamphetamine that Charlie Rose ("Rose"), a co-defendant, and Vasquez agreed to deliver should not have been considered in determining Vasquez's base offense level because Vasquez was not reasonably capable of providing the additional two pounds due to his imminent arrest. For the reasons discussed below, we **AFFIRM** the sentence imposed by the district court.

## I. BACKGROUND

The facts of this case are not in dispute. In March 2001, agents with the Tennessee Bureau of Investigation ("TBI") received information from a confidential informant ("CI") that Rose could deliver methamphetamine. The CI arranged

to purchase one pound of methamphetamine from Rose and to have it delivered in Meigs County, Tennessee. On March 19, 2001, the CI and an undercover TBI agent met Rose at a designated residence in Meigs County. Additional TBI agents monitored the transaction.

When Rose arrived at the residence, he was accompanied by Vasquez. Previously, in Dalton, Georgia, Eric Estrada ("Estrada") had "fronted" the methamphetamine that Rose was to deliver in Meigs County. Estrada had sent his associate, Vasquez, along with Rose on the March 19, 2001 transaction to ensure that Rose delivered the methamphetamine and that Estrada received payment.

At the residence in Meigs County, Rose and Vasquez negotiated to sell an additional two pounds of methamphetamine to the CI. Rose and Vasquez told the CI that they would deliver the additional two pounds of methamphetamine for $20,000 at a later date. Then, Rose and Vasquez delivered the original one pound of methamphetamine in exchange for $11,500. Immediately thereafter, TBI agents arrested Rose and Vasquez. When TBI agents searched the car that Rose and Vasquez used to travel to Meigs County, they found a loaded Colt .45 in plain view.

On April 11, 2001, Vasquez and two co-conspirators were charged in a three-count Indictment. On May 22, 2001, a Superseding Indictment added three additional co-conspirators. In Count One of the Superseding Indictment, Vasquez and five co-conspirators were charged with conspiring to distribute five hundred grams or more of a mixture or substance containing a detectable amount of methamphetamine, in violation of 21 U.S.C. §§ 846, 841(a)(1), and 841(b)(1)(A). In Count Two, Vasquez and two co-conspirators were charged with distributing fifty grams or more of a mixture or substance containing a detectable amount of methamphetamine on or about March 19, 2001, in violation of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(B). In Count Three, Vasquez and two co-conspirators were charged

with knowingly and intentionally carrying a firearm in relation to the drug trafficking offenses set out in Counts One and Two, in violation of 18 U.S.C. §§ 2 and 924(c). On September 6, 2001, Vasquez pleaded guilty to Counts One and Three of the Superseding Indictment pursuant to a written plea agreement. Count Two was dismissed upon motion by the government. On January 4, 2002, Vasquez was sentenced to 101 months' imprisonment (forty-one months on Count One and sixty months on Count Three) and four years of supervised release. At the sentencing hearing, Vasquez objected to the amount of methamphetamine used to determine his base offense level, arguing that he was not reasonably capable of delivering the additional two pounds of methamphetamine due to his imminent arrest.

In response to Vasquez's objection, the government argued that under Note 12, the additional two pounds of methamphetamine that Rose and Vasquez agreed to deliver should be considered in determining Vasquez's base offense level because Vasquez agreed to deliver, intended to deliver, and was reasonably capable of delivering the additional two pounds of methamphetamine. The government supported its argument that Vasquez was reasonably capable of obtaining and delivering the additional methamphetamine by showing that during the same month, Estrada, Rose's and Vasquez's supplier, engaged in transactions for one-half of a pound, one pound, and two pounds of methamphetamine.[1]

---

[1] During March 2001, the Georgia Bureau of Investigation ("GBI") investigated Estrada and Hector Garnica ("Garnica"). On March 12, 2001, Estrada sold one-half of a pound of methamphetamine to a Georgia CI. Then, on March 16, 2001, Estrada and Braulio Garnica ("Braulio") delivered an additional one pound of methamphetamine to the CI. On March 18, Estrada arranged to deliver two pounds of methamphetamine to the same CI for $19,000. On March 24, 2001, Braulio delivered the two pounds of methamphetamine to the CI for Estrada. Estrada, Garnica, and Melinda Knight were also present at that delivery.

The district court overruled Vasquez's objection and accepted the calculations contained in the Presentence Report ("PSR"). The PSR used the additional two pounds of methamphetamine that Rose and Vasquez agreed to deliver and the one pound of methamphetamine that Rose and Vasquez actually delivered to determine Vasquez's base offense level. In accordance with the PSR, the district court set Vasquez's base offense level for Count One at level thirty-two. Vasquez received a minor role reduction of two levels, making his adjusted offense level thirty for Count One. Additionally, Vasquez received a three-level adjustment for acceptance of responsibility, making his total offense level a twenty-seven for Count One. The district court also granted downward departures of four levels for the government's § 5K1.1 motion and three levels for Vasquez's testimony at the sentencing hearing. These downward departures reduced Vasquez's offense level to twenty and resulted in a sentencing guideline range of forty-one to fifty-one months for Count One. The district court sentenced Vasquez at the lower end of the range, to forty-one months' imprisonment on Count One. In his brief, Vasquez points out that if the additional two pounds of methamphetamine were not used to determine Vasquez's base offense level, Vasquez's offense level would have been eighteen, with a sentencing guideline range of thirty-three to forty-one months.

Vasquez timely appealed his sentence. On appeal, Vasquez's only argument is that the district court erred in its determination of his base offense level due to that court's misapplication of Note 12. Vasquez argues that he was not reasonably capable of delivering the additional two pounds of methamphetamine due to his imminent arrest and thus that Note 12 requires the exclusion of the additional two pounds from the determination of his base offense level.

## II. ANALYSIS

### A. Jurisdiction

The district court had jurisdiction pursuant to 18 U.S.C. § 3231 because Vasquez was charged with offenses against the laws of the United States. This court has jurisdiction over the appeal under 28 U.S.C. § 1291 and 18 U.S.C. § 3742(a)(2) because Vasquez is appealing the district court's final sentence on the ground that it was imposed through an incorrect application of the guidelines.

### B. Standard of Review

This court reviews for clear error "the district court's determination of the quantity of drugs attributable to defendant for sentencing purposes." *United States v. Ukomadu*, 236 F.3d 333, 341 (6th Cir. 2001). "[A] finding is clearly erroneous when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." *Anderson v. City of Bessemer City*, 470 U.S. 564, 573 (1985) (quoting *United States v. United States Gypsum Co.*, 333 U.S. 364, 395 (1948)) (internal quotation marks omitted). A reviewing court may not reverse a finding of the trier of fact merely because it would have decided the matter differently. *Id.* Rather, "[i]f the district court's account of the evidence is plausible in light of the record viewed in its entirety, the court of appeals may not reverse it even though convinced that had it been sitting as the trier of fact, it would have weighed the evidence differently." *Id.* at 573-74.

### C. Determination of Vasquez's Base Offense Level Under Note 12

In this case, determination of the quantity of drugs attributable to Vasquez turns upon proper application of Note 12, which provides:

In an offense involving an agreement to sell a controlled substance, the agreed-upon quantity of the controlled substance shall be used to determine the offense level unless the sale is completed and the amount delivered more accurately reflects the scale of the offense. . . . If, however, the defendant establishes that he or she did not intend to provide, or was not reasonably capable of providing, the agreed-upon quantity of the controlled substance, the court shall exclude from the offense level determination the amount of controlled substance that the defendant establishes that he or she did not intend to provide or was not reasonably capable of providing.

U.S.S.G. § 2D1.1, cmt. n.12 (2001). The parties agree that for an offense involving an agreement to sell a controlled substance that is not completed, Note 12 requires that courts use the agreed-upon quantity to determine the offense level, unless the defendant did not intend to provide or was not reasonably capable of providing the agreed-upon quantity. Although Vasquez correctly points out that there is a circuit split regarding which party has the burden of proof under Note 12, the Sixth Circuit places the burden on the defendant. *United States v. Munoz*, 233 F.3d 410, 415 (6th Cir. 2000). "The Sixth Circuit has held that 'once the government satisfies its burden in establishing a negotiated amount, the defendants have the burden of proving they were not capable of producing that amount.'" *Id.* (quoting *United States v. Christian*, 942 F.2d 363, 368 (6th Cir. 1991)).

In this case, Vasquez does not dispute that he agreed to sell the additional two pounds of methamphetamine and that he intended to do so. Vasquez only disputes the district court's finding that he was reasonably capable of providing the additional two pounds of methamphetamine. Thus, Vasquez argues that the district court committed clear error when it included the additional two pounds in the determination of his base offense level.

Vasquez has the burden of proving that he was not reasonably capable of providing the additional two pounds of methamphetamine. *Munoz*, 233 F.3d at 415. Vasquez relies on the following facts in an effort to demonstrate that he was not reasonably capable of providing the additional two pounds: (1) two TBI agents were inside the residence in Meigs County when the transaction occurred; (2) TBI agents installed listening devices in the house prior to the transaction; (3) TBI agents arranged to have Vasquez and Rose arrested immediately after they brought the methamphetamine mixture into the home (demonstrated by the fact that a TBI agent exchanged a bag with no money in it for the methamphetamine); (4) Rose and Vasquez were not permitted to leave the residence; and (5) the CI negotiated the transaction with "full knowledge" that Vasquez would be unable to complete the transaction. In essence, Vasquez argues that he was not reasonably capable of providing the additional methamphetamine because TBI agents planned to, and did, arrest Vasquez immediately after the agreement; therefore, he had no opportunity to obtain or deliver the additional methamphetamine.

The government counters that the district court did not err when it included the additional two pounds of methamphetamine in its determination of Vasquez's base offense level. To demonstrate that Vasquez was reasonably capable of providing the additional two pounds, the government points to the fact that during the same month as Vasquez's arrest, Vasquez's supplier engaged in monitored transactions of one-half of a pound, one pound, and two pounds of methamphetamine.[2] The government argues that

---

[2] The government also points to Vasquez's admission at the sentencing hearing that there is evidence showing that Vasquez could complete the transaction. Specifically, the government cites Vasquez's counsel's statement that "[t]here is no evidence to show that [defendant and Rose] couldn't have provided the two pounds. In fact, there is evidence to show that they could have provided two pounds." Appellee's Br. at 11 (quoting Joint Appendix ("J.A.") at 65 (Sentencing Hr'g Tr.)).

Vasquez was reasonably capable of providing the additional methamphetamine because during the same month Vasquez's supplier was engaging in transactions of up to two pounds. Thus, if Vasquez had not been arrested, Vasquez could have obtained and delivered the additional methamphetamine.

We are aware that in cases such as this, when the government conducts an undercover operation and makes a suggestion to the defendant about future transactions, increasing a defendant's sentence based upon an agreement to sell a controlled substance might tempt law enforcement to suggest additional transactions involving large quantities of drugs merely to escalate the defendant's potential sentence. In an extreme case, law enforcement officials could suggest additional sales of drug quantities so out of proportion to the defendant's normal course of dealings that it would be unfair to sentence the defendant based upon that amount. The language of Note 12, however, protects defendants from this possible abuse. Note 12 instructs the sentencing court to "exclude from the offense level determination the amount of controlled substance that the defendant establishes that he or she did not intend to provide or was not reasonably capable of providing." U.S.S.G. § 2D1.1, cmt. n.12 (2001).

We have clearly articulated that once the government establishes the agreed-upon quantity, the defendant has the burden of proving that he or she either did not intend to provide or was not reasonably capable of providing that amount. *Munoz*, 233 F.3d at 415. However, we have not yet given the district courts much guidance regarding what factors they should consider when deciding whether the defendant has met his or her burden.

We agree with the Third Circuit's conclusion that the factors that district courts should consider when deciding whether a defendant has met his or her burden vary somewhat according to the role the defendant was expected to play in the future transaction. *United States v. Raven*, 39 F.3d 428, 436 (3d Cir. 1994). In *Raven*, the Third Circuit stated that "to

apply the principle embodied in Note 12, the focus must shift according to a defendant's role in the offense." *Id*. The court further explained that "[w]hen the defendant is a drug buyer, Note 12 would address the quantity of drugs that the defendant intended to purchase and was reasonably capable of purchasing. And where . . . a defendant has been convicted of conspiring to transport drugs, the proper focus is the quantity of drugs the defendant intended to transport and was reasonably capable of transporting." *Id*. at 437. (internal citations omitted). Thus, in cases such as this, where the defendant acted as an emissary for a particular drug supplier, the fact that the supplier was engaging in transactions involving similar quantities of the drug at issue during the same time period can be probative evidence that the defendant was reasonably capable of providing that amount.

Additionally, there are some factors that are indicative of a defendant's intent and capability regardless of his or her role in the transaction. When applying Note 12, other circuits have considered factors such as: whether the defendant engaged in serious negotiations rather than mere "idle talk," whether the defendant participated in similar transactions on prior occasions, and whether the defendant hesitated before agreeing to the transaction. *United States v. Wash*, 231 F.3d 366, 373 (7th Cir. 2000), *cert. denied*, 532 U.S. 1057 (2001); *United States v. Hazut*, 140 F.3d 187, 193 (2d Cir. 1998); *United States v. Williams*, 109 F.3d 502, 512 (8th Cir.), *cert. denied*, 522 U.S. 917 (1997); *United States v. Hendrickson*, 26 F.3d 321, 337 (2d Cir. 1994), *further proceedings at*, No. 95-1483, 1996 WL 508453 (Sept. 9, 1996), *cert. denied*, 520 U.S. 1129 (1997). Although increasing a defendant's sentence based upon an agreement to sell a controlled substance might tempt law enforcement to suggest additional sales of large quantities of drugs merely to escalate the defendant's potential sentence, district courts can ensure that defendants are not sentenced based upon quantities far outside of their normal course of dealings by carefully evaluating the evidence pertaining to the defendant's intent and capability.

Applying the factors articulated above, we conclude that the district court did not commit clear error when it determined that Vasquez was reasonably capable of providing the additional two pounds of methamphetamine. Vasquez was to act as an emissary for his supplier in the agreed-upon transaction; therefore, the fact that Vasquez's supplier was engaging in transactions of up to two pounds of methamphetamine demonstrates that Vasquez could have obtained the additional methamphetamine. Furthermore, the factual background contained in the PSR, which was adopted by the district court, indicates that Vasquez engaged in serious negotiations rather than mere idle talk and that Vasquez did not hesitate before agreeing to the transaction. The only circumstance that prevented Vasquez from obtaining and delivering the additional methamphetamine was his own arrest immediately after he agreed to provide the additional two pounds. In the context of applying Note 12, however, this court has held that when the fortuitous intervention of law enforcement alters the drug quantity, the defendant should still be held responsible for the entire amount. *Ukomadu*, 236 F.3d at 341.

In *Ukomadu*, customs officials intercepted a package containing 293.3 grams of heroin and removed all but six grams. *Id.* at 340.[3] When the package came into the possession of the defendant, it contained only six grams of heroin. *Id.* We upheld an offense level determination based

---

[3]In *Ukomadu*, the determination of the quantity of drugs attributable to the defendant for sentencing purposes was controlled by a different provision of the U.S.S.G. than is involved in the present case. *United States v. Ukomadu*, 236 F.3d 333, 340 (6th Cir. 2001). In *Ukomadu*, the parties disputed the quantity of drugs attributable to a defendant for jointly undertaken criminal activity, which turns on U.S.S.G. § 1B1.3, Application Note 2. *Id.* Despite the difference in application notes, the policy rationale underlying this court's decision in *Ukomadu* – to disregard the intervention by law enforcement when determining the quantity of drugs attributable to a defendant – is equally applicable in this case.

upon the entire 293.3 grams, noting that intervention by law enforcement should not alter the amount for which the defendant is held responsible. *Id.* at 341. Similarly, in *Christian*, the defendant engaged in a transaction involving cocaine that was monitored by law enforcement agents, and the defendant was arrested immediately thereafter.[4] 942 F.2d at 365. During the transaction, the defendant discussed the possibility of future deals and stated that for the first two or three weeks, he would purchase about five kilograms per week. *Id.* We upheld an offense level determination based upon ten kilograms, the amount negotiated for the future deals, rejecting the defendant's contention that there was no evidence that he was capable of purchasing the two, five-kilogram amounts he had negotiated. *Id.* at 368.

In *Ukomadu*, we articulated our rationale for basing the offense level determination on the entire drug quantity. We sought to avoid forcing officials

> to choose between securing appropriately significant sentences for captured drug offenders and alternatively reducing the quantity of illegal drugs in the stream of

---

[4]*Christian* was decided under an earlier version of this application note, which read: "[W]here the court finds that the defendant did not intend to produce *and* was not reasonably capable of producing the negotiated amount, the court shall exclude from the guideline calculation the amount that it finds the defendant did not intend to produce *and* was not reasonably capable of producing." *United States v. Christian*, 942 F.2d 363, 368 (6th Cir. 1991) (quoting then applicable U.S.S.G. § 2D1.4, cmt. n.1) (emphases added) (internal quotation marks omitted). Thus, under the earlier version, the defendant was required to prove both that he or she did not intend to provide *and* that he or she was not reasonably capable of providing the negotiated amount. *Id.* In 1995, the Guidelines were amended and the prerequisites for exclusion of the negotiated amount were changed from the conjunctive to the disjunctive. U.S.S.G. § 2D1.1, cmt. n.12 (2001). Thus, under the current version, the defendant need only prove either that he or she did not intend to provide *or* that he or she was not capable of providing the negotiated amount. *Id.* In spite of this alteration, the showing a defendant must make to satisfy the "reasonably capable" prong remains the same.

commerce. It is better policy to permit officials to remove dangerous drugs from the market without jeopardizing significant sentences for offenders where it is clear that the original amount of drugs was within the scope of activity that the defendant jointly undertook.

*Ukomadu*, 236 F.3d at 341. As the government points out, this same rationale applies in this case because the defendant failed to prove that, but for the intervention by law enforcement, Rose and Vasquez would not have been reasonably capable of delivering the additional two pounds. We agree with the government that "it is untenable to require law enforcement agents to permit the conspirators to continue doing business before defendant may be held accountable for the full scope of his criminal conduct." Appellee's Br. at 13.

### III.  CONCLUSION

Because the district court did not commit clear error when it included the additional two pounds of methamphetamine that Vasquez agreed to deliver in calculating his base offense level, we **AFFIRM** the sentence imposed by the district court.