**NOT RECOMMENDED FOR FULL-TEXT PUBLICATION**
File Name: 06a0833n.06
Filed: November 15, 2006

**No. 04-5117**

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA**, | ) | |
| | ) | ON APPEAL FROM THE |
| Plaintiff-Appellee, | ) | UNITED STATES DISTRICT |
| | ) | COURT FOR THE WESTERN |
| v. | ) | DISTRICT OF TENNESSEE |
| | ) | |
| **DEANDRE TOWNSEND**, | ) | **O P I N I O N** |
| | ) | |
| Defendant-Appellant. | ) | |

BEFORE:    BATCHELDER and McKEAGUE, Circuit Judges; and ACKERMAN, District Judge.*

**McKEAGUE, Circuit Judge.**   After a jury trial, defendant-appellant Deandre Townsend was found guilty of being a felon in possession of a firearm. Because he had three prior qualifying convictions, he was sentenced as a career criminal under the Sentencing Guidelines to 235 months' imprisonment, the lowest sentence within the applicable Guideline range. On appeal, Townsend contends the district court erred in allowing the prosecution to introduce certain evidence at trial. He also objects to the district court's determination that three of his prior convictions were for "violent felonies," subjecting him to the career offender sentencing enhancement.

_____

    * Honorable Harold A. Ackerman, Senior United States District Judge for the District of New Jersey, sitting by designation.

After careful consideration, we conclude that none of Townsend's claims of error has merit. His conviction will therefore be affirmed. However, the judgment of sentence must be vacated and the case remanded for resentencing in accordance with *United States v. Booker*, 543 U.S. 220 (2005).

## I. FACTUAL AND PROCEDURAL BACKGROUND

Early in the morning of June 20, 2002, the Memphis Police Department received a "suspicious person" complaint from an employee of an Amoco service station reporting that a vehicle, a Ford Explorer, had been parked at a gas pump for some time and its driver seemed to be asleep or passed out. At 5:30 a.m., Officers James Gaylor and Paul Bishop, in response to instructions from dispatch, arrived at the Amoco station to find a Ford Explorer parked in front of an open gas pump, engine off. Its only occupant, later determined to be Deandre Townsend, was asleep or otherwise incapacitated, slumped in the driver's seat. The officers parked their patrol car ten to fifteen feet behind the Explorer before investigating further.

Officer Gaylor approached the vehicle from the passenger side, while Officer Bishop went to the driver's side. After Gaylor determined the car was not running, he "maintained a watch" while his partner took the lead. Bishop first addressed the occupant verbally, but got no response. With the aid of a flashlight, he observed what he thought was a pistol lodged between the driver's seat and the center console.[1] Believing that the occupant was either asleep or intoxicated, Bishop proceeded to open the car door, reach across the motionless occupant, and remove the keys from the ignition.

---

[1]Bishop thought Gaylor had acknowledged seeing the handgun also, but as it turned out, Gaylor did not actually observe the handgun until moments later, when Townsend was ordered out of the vehicle.

This was in accordance with what Gaylor characterized as "common practice" in encountering people found sleeping behind the wheel. He explained that "when you wake somebody up, a lot of times, they just want to leave right then." Hence, the key removal practice is a safety precaution, to ensure the driver does not "wake up with a startle and take off on us." Suppression hearing tr. pp. 11-12, JA 37-38.

In fact, Townsend did awake with a startle just as Bishop removed the keys. He immediately reached for the ignition as though to start the vehicle and then tussled with the officers, until he realized they were police officers. As Bishop began to remove Townsend from the vehicle – for officer safety and to determine whether he needed medical attention – Gaylor, too, observed what appeared to be the handle of a handgun protruding from between the driver's seat and the console. For officer safety, the officers handcuffed Townsend and placed him in the back of their patrol car pending further investigation.

Bishop retrieved the handgun from the Explorer. It was loaded. Bishop conducted a visual search or "sweep" of the vehicle's interior and then carried the handgun back to the patrol car. The officers ran a check for outstanding warrants and driving history. They discovered that Townsend had outstanding warrants for assault and for violation of a personal protection order that prohibited him from possessing a firearm. Officer Gaylor subsequently informed Townsend that he was under arrest for possession of a firearm.

On November 25, 2002, a federal grand jury in the Western District of Tennessee indicted Townsend for being a felon in possession of a firearm, in violation of 18 U.S.C. § 922(g). Defendant Townsend filed a pretrial motion to suppress all evidence gathered during the arrest as fruits of an

illegal search. The magistrate judge conducted an evidentiary hearing and prepared a report and recommendation that was adopted by the district court. In relevant part, Townsend's motion to suppress the pistol was denied.

In the ensuing trial, Townsend objected to the introduction of a tape-recorded telephone conversation between himself and his mother while he was detained in the local jail. The conversation pertained to the handgun seized from the Explorer. The trial court overruled the objection.

The jury found Townsend guilty of being a felon in possession of a firearm under 18 U.S.C. § 922(g) . At sentencing, the district court determined that Townsend had three prior violent felony convictions. He was classified as an armed career criminal under 18 U.S.C. § 924(e), resulting in a significant sentence enhancement under the Sentencing Guidelines. No downward departures were granted. The district court sentenced Townsend to a prison term of 235 months. On appeal, Townsend challenges the denial of his motion to suppress, the admission of the tape recorded conversation, and his classification by the district court as an armed career criminal.

## II. ANALYSIS

### A. Denial of Motion to Suppress

In reviewing the denial of the motion to suppress, we review the district court's factual findings for clear error and its conclusions of law *de novo*. *United States v. Montgomery*, 377 F.3d 582, 585 (6th Cir. 2004); *United States v. Harris*, 192 F.3d 580, 584 (6th Cir. 1999). We must view the evidence in the light most favorable to the government. *Montgomery*, 377 F.3d at 585. A finding is not "clearly erroneous" unless the reviewing court, on considering the entire evidence, is

left with the definite and firm conviction that a mistake has been committed. *United States v. Vasquez*, 352 F.3d 1067, 1070 (6th Cir. 2003).

Defendant Townsend first challenges the finding that the officers saw the handgun prior to entering the Explorer. Townsend maintains that because Officer Gaylor was undisputedly in the better position to view the handgun, his admitted initial failure to see the gun, rather than Officer Bishop's reported observation of it, should have been deemed more credible. If Bishop did not actually observe the handgun, then, Townsend argues, his actions of reaching into the vehicle and removing the keys from the ignition, and then removing Townsend from the Explorer, were more intrusive than warranted by the purposes of the investigative stop. That is, the officers are said to have effectively seized Townsend without reasonable suspicion of criminal activity, in violation of his Fourth Amendment rights. Consequently, Townsend argues, the fruit of these improper actions, the handgun, should have been suppressed.

While the record discloses that Gaylor had the better position from which to view the gun, this does not foreclose the possibility that Bishop, with the aid of his flashlight, actually observed the handgun first. Considering that Bishop was closest to Townsend, and his account of seeing the handgun before entering the vehicle is not disputed, it was not unreasonable for the district court to accept his testimony as truthful, even though it was not corroborated by Gaylor's initial observations. After all, Gaylor, too, observed the handgun within seconds after Bishop reached into the vehicle. The handgun was actually there; it was not a fabricated pretext to justify overreaching by the police. Hence, the district court's finding that Bishop saw the handgun prior to reaching into the Explorer is not clearly erroneous.

Given the observed presence of the gun, together with the other suspicious circumstances that prompted the officers' investigation, the precautions taken by the officers to secure their safety, as well as the safety of Townsend and others, were clearly reasonable and justified. Townsend nonetheless insists that Bishop's acts of removing the keys from the ignition and ordering him out of the vehicle constituted an unwarranted and impermissible seizure without reasonable suspicion.

There are three types of permissible encounters between the police and citizens: "(1) the consensual encounter, which may be initiated without any objective level of suspicion; (2) the investigative detention, which, if non-consensual, must be supported by a reasonable, articulable suspicion of criminal activity; and (3) the arrest, valid only if supported by probable cause." *United States v. Waldon*, 206 F.3d 597, 602 (6th Cir. 2000) (quoting *United States v. Avery*, 137 F.3d 343, 352 (6th Cir. 1997). In a consensual encounter, "law enforcement officers may approach an individual and ask general questions without having any reasonable suspicion of criminal activity, so long as the officers refrain from the type of intimidating behavior that would lead a reasonable person to believe that the person was not free to leave." *Id*., 206 F.3d at 603.

Here, in response to a suspicious person complaint, the officers approached the parked Explorer to make inquiry. Consistent with the complaint, the officers observed that the occupant appeared to have fallen asleep or passed out in the driver's seat. Bishop saw what he thought was the handle of a pistol next to the driver's seat. He addressed the occupant verbally, but received no response. When he opened the door of the Explorer to remove the keys from the ignition for safety reasons, the occupant, Townsend, awoke with a startle, grabbed for the keys, and tussled with the officers before he realized who they were. Until Bishop reached for the keys, this can only be

characterized as having been a permissible consensual encounter. Although Townsend, being asleep, could hardly have consented to the encounter, the officers' plain view observations in a public place did not entail any impermissible intrusion into Townsend's privacy.

Thereafter, even if Bishop's mere seizure of Townsend's keys from the ignition were construed as signaling restraint of Townsend's freedom to leave and commencement of a temporary investigative detention, his observations had by then established the requisite reasonable suspicion to justify the intrusion. "Reasonable suspicion" is more than an ill-defined hunch; it has been defined as requiring "articulable reasons" and "a particularized and objective basis" for suspecting a particular person of involvement in criminal activity. *United States v. Richardson*, 385 F.3d 625, 630 (6th Cir. 2005). In determining whether Officers Bishop and Gaylor had reasonable suspicion, we consider the totality of the circumstances and view the evidence using a common sense approach, as understood by those in the field of law enforcement. *Id*.

Townsend had been asleep at the wheel of a parked vehicle in front of an open-for-business gas pump for an extended period of time. He did not respond to verbal inquiry. Under these circumstances, it was not unreasonable for Bishop to suspect that Townsend had not simply dozed off, but was intoxicated, and may have driven the vehicle, or may have been about to drive the vehicle, while intoxicated – conduct potentially constituting a criminal offense. Moreover, the observed presence of a handgun within Townsend's reach clearly enhanced the suspiciousness of the circumstances and called for swift and sure action. *See Maryland v. Wilson*, 519 U.S. 408, 414 (1997) (recognizing that risk of harm to both police and occupants is minimized if officers routinely exercise unquestioned command of the situation). Considering the totality of the circumstances

using a common sense approach, we conclude the officers had reasonable suspicion to justify an investigative detention.

Once the encounter became an investigative detention, the officers were obliged to employ "the least intrusive means reasonably available to verify or dispel the officer's suspicion in a short period of time." *United State v. Lopez-Arias*, 344 F.3d 623, 627 (6th Cir. 2003) (quoting *Florida v. Royer*, 460 U.S. 491, 500 (1983)). The scope of the permissible intrusion is limited by the circumstances that initially justified the stop. *Id*. Otherwise, the seizure could become an arrest which must be supported not just by reasonable suspicion, but by probable cause. There is, however, no bright line standard for determining when an investigative detention becomes an arrest. *Id*.

Here, seizure of the car keys from the ignition was a minimal intrusion, a reasonable and prudent safety precaution. Because Townsend had not responded to verbal inquiry, the nature of his condition was unknown to the officers and they could not know how he would react when he awoke. Further, because Bishop had observed the handgun in plain view readily accessible to Townsend, his efforts to immediately restrain Townsend and remove him from the vehicle were also reasonable and no more intrusive than necessary under the circumstances. *See Bennett v. City of Eastpointe*, 410 F.3d 810, 822 (6th Cir. 2005) (observing that concern for officer safety permits a variety of police responses in differing circumstances, including ordering a driver out of a car during a traffic stop).

Once Townsend was removed from the Explorer, moreover, the officers were justified in at least temporarily seizing the handgun, even though it was not obviously contraband. Bishop was lawfully positioned when he first observed the handgun in plain view; the handgun is among those

"objects dangerous in themselves" which may be seized without a warrant; and the seizure was justified by legitimate concern for police safety. *See United States v. Bishop*, 338 F.3d 623, 626 (6th Cir. 2003). Hence, at the time the handgun was seized, no infringement of Townsend's Fourth Amendment rights had occurred. The district court properly denied the motion to suppress the handgun.[2]

**B. Objection to Admission of Tape-Recorded Conversation**

Townsend contends that the district court erred by admitting into trial evidence his mother's side of a tape-recorded conversation with him during his pretrial detention in the local jail. He argues that his mother's words are hearsay, that the conversation is too ambiguous to evidence any adoptive admissions on his part, and that any probative value was outweighed by its prejudicial effect. We review evidentiary decisions for abuse of discretion, while the trial court's legal conclusion concerning whether a statement is hearsay is reviewed *de novo*. *United States v. Jacob*, 377 F.3d 573, 580 (6th Cir. 2004).

The government sought to introduce the recorded conversation as bearing on defendant Townsend's knowing possession of the handgun. The import of the conversation is not crystal clear.[3] Reviewed as a whole, however, the brief exchange between Townsend and his mother is

---

[2]Even if the officers' conduct during the investigative detention were deemed to have been more intrusive than reasonably necessary, it is clear that denial of the motion to suppress would have nonetheless been warranted under the inevitable discovery rule. *See United States v. Keszthelyi*, 308 F.3d 557, 573-74 (6th Cir. 2002).

[3]The conversation included, most relevantly, the following:

Mother:        I bet you keep that gun out your car now, won't you?

probative, as the district court concluded, of (1) Townsend's possible motive for possessing the handgun (*i.e.*, personal protection while carrying approximately $380); and (2) Townsend's knowing possession of the handgun. The district court concluded that Townsend's side of the conversation was admissible as non-hearsay statements offered against a party pursuant to Fed. R. Evid. 801(d)(2)(A). The court held the mother's side of the conversation was not hearsay because *her*

---

Townsend:     Um, hum – They took it.

\* \* \* \*

Mother:       You got you another one?

Townsend:     I got to – I just.... [unintelligible]

\* \* \* \*

Mother:       They took two hundred off you?

\* \* \* \*

Townsend:     I think about 380, something like that.

\* \* \* \*

Mother:       Huh, well you know better than to have that kind of money on you anyway, Deandre.

Townsend:     I had just took a couple thousand to the house and kept that in my pocket.

Mother:       Somebody can get killed taking that kind of money around with you.

Townsend:     Yeah, but I was fixing to go do something though.

statements (substantially in the form of questions) were not offered for the truth of any matter asserted, *see* Fed. R. Evid. 801(c), but to provide context, making Townsend's side of the conversation intelligible.

Townsend's challenge to the district court's ruling is based on a mischaracterization of it. He argues that the court held his answers to his mother's questions were admissible as adoptive admissions pursuant to Rule 801(d)(2)(B), rather than Rule 801(d)(2)(A).[4] He maintains that, even if his answers are considered in the context of his mother's questions, they do not manifest his acquiescence or belief in the premises of his mother's questions and should not therefore have been admitted as admissions.

The district court clearly did not rule that Townsend's statements were admissible as adoptive admissions under Rule 801(d)(2)(B). The court never reached the question. It correctly recognized that Townsend's statements were admissible, whether or not they were "admissions" or statements "against interest," under Rule 801(d)(2)(A). *See United States v. Stine*, 313 F.3d 912 (unpub. app'x) (6th Cir. 2002). Notwithstanding the appearance of the word "admission" in the heading of Rule 801(d)(2), there is no requirement that a party's out-of-court statement be a confession or statement

_____

[4]Rule 801(d)(2) provides in relevant part as follows:

> (d) Statements which are not hearsay. A statement is not hearsay if –
> . . . .
> (2) Admission by party-opponent. The statement is offered against a party and is (A) the party's own statement, in either an individual or representative capacity or (B) a statement of which the party has manifested an adoption or belief in its truth....

against interest to be admissible against the party in trial. *United States v. McDaniel*, 398 F.3d 540, 545 n.2 (6th Cir. 2005).

Similarly, the district court's admission of the mother's side of the conversation was not an abuse of discretion. Having correctly determined that Townsend's side of the conversation was admissible, the mother's side was demonstrably necessary to provide context and make Townsend's side intelligible to the jury. See *Stine*, 313 F.3d 912 (unpub. app'x.). Since the mother's statements and questions were not offered for the truth of any matter she asserted, they were not hearsay. *Id*.

Neither can we conclude, as urged by Townsend, that the recorded conversation should have been excluded under Fed. R. Evid. 403 because its "probative value was substantially outweighed by the danger of unfair prejudice." As used in Rule 403, "'unfair prejudice' does not mean the damage to the defendant's case that results from the legitimate probative force of the evidence; rather, it refers to evidence which tends to suggest decision on an improper basis." *Barnes v. City of Cincinnati*, 401 F.3d 729, 744 (6th Cir. 2005) (quoting *United States v. Mendez-Ortiz*, 810 F.2d 76, 79 (6th Cir. 1986)). The conversation between Townsend and his mother, though not conclusive, is legitimately probative of Townsend's knowing possession of the handgun. It is relevant and probative in that it has a tendency to make the existence of Townsend's knowing possession of the handgun more or less probable. *See* Fed. R. Evid. 401. Townsend has failed to identify how this probative value is substantially outweighed by the danger of *unfair* prejudice. We therefore find no error in the district court's admission of the evidence.

## C. Sentencing Issues

Although he did not object at the time of sentencing, Townsend now claims the district court exceeded its authority when, for purposes of enhancing his sentence under U.S.S.G. § 4B1.4 and the Armed Career Criminal Act, 18 U.S.C. § 924(e), it made the factual determination that three of his prior convictions were for violent felonies. Townsend does not challenge the correctness of the district court's determination, but contends the determination ought to have been made by the jury upon proof beyond a reasonable doubt, citing *Apprendi v. New Jersey*, 530 U.S. 466 (2000).

Whether the district court's application of the Armed Career Criminal Act ("ACCA") violated Townsend's Sixth Amendment right to trial by jury is a matter of law which we would review *de novo*. *United States v. Copeland*, 321 F.3d 582, 601 (6th Cir. 2003). Because Townsend did not preserve the issue by raising it below, however, it is reviewable only for plain error. *Id*. Yet, in any event, it is now settled that *Apprendi* does not require the nature of prior convictions to be determined by a jury *United States v. Jones*, 453 F.3d 777, 779 (6th Cir. 2006); *United States v. Brown*, 444 F.3d 519, 522 (6th Cir. 2006); *United States v. Barnett*, 398 F.3d 516, 525 (6th Cir. 2005). Accordingly, we conclude the district court did not err by determining the nature of Townsend's prior convictions. This claim of error is overruled.

The government concedes, however, that remand for resentencing is appropriate. The district court applied the Sentencing Guidelines as though mandatory, rather than advisory, as now required by the Supreme Court's ruling in *United States v. Booker*, 543 U.S. 220 (2005). This error is presumed to have affected Townsend's substantial rights and warrants resentencing. *Barnett*, 398

F.3d at 527-29.  Accordingly, the judgment of sentence must be vacated and the matter remanded to the district court for resentencing.

## III.  CONCLUSION

For the foregoing reasons, defendant Townsend's conviction is **AFFIRMED**. The judgment of sentence, however, is **VACATED**, and the case is **REMANDED** to the district court for resentencing in accordance with *United States v. Booker.*