*RECOMMENDED FOR FULL-TEXT PUBLICATION*
Pursuant to Sixth Circuit Rule 206
File Name: 07a0274p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

*v.*

No. 04-4129

LARRY CRAFT,

*Defendant-Appellant.*

Appeal from the United States District Court
for the Northern District of Ohio at Youngstown.
No. 03-00421—Kathleen McDonald O'Malley, District Judge.

Argued: March 6, 2007

Decided and Filed: July 20, 2007

Before: BATCHELDER and MOORE, Circuit Judges; MILLS, District Judge.[*]

_____

**COUNSEL**

_____

**ARGUED:** Kevin M. Schad, SCHAD & SCHAD, Lebanon, Ohio, for Appellant. Matthew B. Kall, ASSISTANT UNITED STATES ATTORNEY, Cleveland, Ohio, for Appellee. **ON BRIEF:** Kevin M. Schad, SCHAD & SCHAD, Lebanon, Ohio, for Appellant. Linda H. Barr, ASSISTANT UNITED STATES ATTORNEY, Youngstown, Ohio, for Appellee.

_____

**OPINION**

_____

RICHARD MILLS, District Judge.

## I. HISTORY

On September 21, 2002, Youngstown, Ohio police officers discovered crack cocaine at the residence of Jefferson Smith while they were investigating his death. After finding out that Defendant Larry Craft was at Smith's residence hours before Smith's death, police left a phone message with Craft's mother asking Craft to contact them.

---

[*]The Honorable Richard Mills, United States District Judge for the Central District of Illinois, sitting by designation.

On September 26, 2002, Craft, a high school graduate who attended special education classes, went to the police station to speak with Detective Pat Kelly. Detective Kelly advised Craft of his rights and the two men spoke for 30-45 minutes. Craft, who had experience with the criminal justice system through previous drug and weapon offenses, incriminated himself and Bryon Taylor about the cooking of crack cocaine in Smith's house. Craft was never charged with respect to the drugs police found in Smith's house; however, police began investigating him for drug offenses.

On March 4, 2003, Youngstown police referred Craft's case to the Bureau of Alcohol Tobacco, Firearms, and Explosives ("ATF"). At the request of ATF Task Force Officer Frank Rutherford ("TFO Rutherford"), Detective Kelly contacted Craft on March 6, 2003, and asked Craft to go to the ATF's office for an interview. The interview was held that same day. Detective Kelly observed the meeting between TFO Rutherford and Craft. TFO Rutherford advised Craft of his rights and Craft signed a form acknowledging and waiving his rights. In his ensuing remarks, Craft made a statement consistent with the one he made to Detective Kelly on September 26. TFO Rutherford reduced Craft's statement to writing and read it to Craft. Craft made insubstantial corrections and then signed the statement.

On November 13, 2003, a grand jury indicted Craft of conspiring to distribute and possess with intent to distribute more than 50 grams of crack cocaine. Craft moved to suppress his statements and the district court held a suppression hearing on April 7, 2004.

Craft argued that his September 26, 2002, and his March 6, 2003, statements should be suppressed. Craft asserted that the September statement should be suppressed because Detective Kelly told him he was a suspect in Smith's death, assured him he would not be charged with drug offenses, did not advise him of his rights, and did not obtain a signed waiver. At the suppression hearing, Detective Kelly stated that he told Craft "I was not interested in the drugs; I was interested in the homicide." Craft contended that his March 2003 statement should be suppressed because he gave it based on his impression that he would not be charged with any drug offenses. After considering the totality of the circumstances, the district court determined that Craft's statements were voluntary.

Craft's case proceeded to jury trial. On April 8, 2004, the government filed a 21 U.S.C. § 851 notice of its intent to use a prior conviction against Craft. *Voir dire* took place on June 16, 2004, and trial began that same day. At trial, the government's evidence showed that Smith possessed at least one kilogram of cocaine on September 20, 2002, and asked Craft to cook it. Bryon Taylor testified that Craft cooked two nine-ounce portions of the cocaine into crack. This was corroborated by Craft's own statements. On June 17, the jury found Craft guilty.

On August 26, 2004, the district court sentenced Craft. The court never engaged Craft in a 21 U.S.C. § 851(b) colloquy to determine whether he contested the prior conviction stated in the government's April 8 tender. However, upon consideration of the applicable statutory mandatory minimum, the district court sentenced Craft to 240 months in prison and imposed a term of 10 years supervised release. Craft timely appealed, raising four issues for this Court's consideration.

## II. JURISDICTION

This Court has appellate jurisdiction pursuant to 28 U.S.C. § 1291.

## III. STANDARD OF REVIEW

The Court reviews the district court's factual findings concerning the confession for clear error, while the issue of its voluntariness is reviewed *de novo. See United States v. Marks,* 209 F.3d 577, 581 (6th Cir. 2000). The standard of review for a sufficiency of the evidence challenge is "whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier

of fact could have found the essential elements of the crime beyond a reasonable doubt." *United States v. Davis*, 473 F.3d 680, 681 (6th Cir. 2007) (quoting *Jackson v. Virginia,* 443 U.S. 307, 319, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979)). Because Craft did not contest the use of his prior conviction, the Court reviews the use of his prior conviction for plain error. *See United States v. Calloway,* 116 F.3d 1129, 1134 (6th Cir. 1997). Because Craft also did not argue that enhancing his sentence based on his prior conviction violated the Sixth Amendment, the Court reviews the constitutionality of the sentencing enhancement for plain error. *See United States v. Hopkins*, 151 F.App'x 448, 457 (6th Cir.2005).

## IV. DISCUSSION

### A. Voluntariness of Confession

Craft's first contention is that his confession was involuntary. When considering whether a confession is voluntary, we look at "the totality of the circumstances" to determine whether "a defendant's will was overborne in a particular case." *Ledbetter v. Edwards,* 35 F.3d 1062, 1067 (6th Cir.1994). Relevant factors include the defendant's age, his level of education and intelligence, whether he was advised of his rights, whether he suffered physical punishment and the length of the questioning he endured. *See Schneckloth v. Bustamonte,* 412 U.S. 218, 226, 93 S.Ct. 2041, 2047, 36 L.Ed.2d 854 (1973) (citations omitted). A confession is involuntary if the police engaged in objectively coercive activity, the coercive activity was sufficiently severe to overcome the defendant's will and the defendant's statements stemmed from the coercion. *See United States v. Mahan,* 190 F.3d 416, 422 (6th Cir.1999).

Craft contends that he confessed because Detective Kelly promised him that he would not be prosecuted for drug offenses. However, at the suppression hearing, Detective Kelly stated that he told Craft only that " . . . I was not interested in the drugs; I was interested in the homicide." Detective Kelly's statement contains an implicit promise not to prosecute Craft for drug offenses. It is reasonable why Craft thought he would avoid state and federal charges, given that Detective Kelly worked with a joint task force and was present during all the interrogations. This mutuality of law enforcement can make for troubling results when promises are made. *See United States v. Johnson*, 351 F.3d 254, 262 (6th Cir. 2003) ("[P]romises of leniency may be coercive if they are broken or illusory."). This is especially so when, as here, a defendant is only a high school graduate who attended special education classes.

In this case, however, Craft and Detective Kelly disputed the timing of Detective Kelly's alleged promises, a critical fact in our analysis. Craft testified that he was told before he gave a statement on September 26, 2003, that he would not face drug charges; Detective Kelly testified that he told Craft that he was "not interested" in drugs only at the end of the interview, after Craft had already given his statement. If Detective Kelly made an implicit promise *after* Craft had given his statement, it could not have been coercive, as Craft's decision to make a statement could not have depended on Detective Kelly's promise. *See Williams v. Withrow*, 944 F.2d 284, 289 (6th Cir. 1991) (discussing the coercive nature of "deliberate *inducement* of inculpatory statements through illusory promises of leniency" (emphasis added)), *aff'd in part and rev'd on other grounds in part*, 507 U.S. 680 (1993). The district court credited Detective Kelly's testimony, concluding that Detective Kelly's implicit promise was a "gratuitous offer that did not induce" Craft's statements. We conclude that the district court did not clearly err in making this credibility determination.

Craft and Detective Kelly similarly disputed the timing of the alleged promise made during the March 6, 2004 interview. Craft testified that he was told that he would not face drug charges before he gave a statement; Detective Kelly testified that the issue came up only after Craft made his statement and that TFO Rutherford told Craft that Craft could possibly face drug charges. The

district court again concluded that any implicit promise did not induce Craft's statements, and we again conclude that the district court did not clearly err in resolving this factual dispute.

Finally, we conclude that any implicit promise made by Detective Kelly on September 26, 2003, after Craft gave a statement, did not render Craft's March 6, 2004 statement inadmissible. A substantial amount of time passed between the two statements, Craft was not under police custody in the interim, and Craft was again advised of his *Miranda* rights at the outset of the March 6, 2004 interview. Under such circumstances, any potential coercive effect of Detective Kelly's September 26, 2003 implicit promise did not taint the March 6, 2004 statement. *Cf. Missouri v. Seibert*, 542 U.S. 600, 622 (2004) (Kennedy, J., concurring in the judgment) (stating that, when police question a suspect without administering the *Miranda* warnings, "a substantial break in time and circumstances between the prewarning statement and the *Miranda* warning may suffice in most circumstances" to render the postwarning statement admissible). Accordingly, we conclude that the district court did not err in denying Craft's motion to suppress his statements.

### B. Sufficiency of the Evidence

Craft additionally argues that there was insufficient evidence to support his conspiracy conviction. The Supreme Court has held that "proof of a criminal charge beyond a reasonable doubt is constitutionally required" by the due process guarantee of the Fourteenth Amendment. *In re Winship,* 397 U.S. 358, 362, 90 S.Ct. 1068, 1071, 25 L.Ed.2d 368 (1970). In *Jackson,* the Court further explained that in order for a conviction to be supported by sufficient evidence, it must be possible for some rational trier of fact to "have found the essential elements of the crime beyond a reasonable doubt." *Jackson,* 443 U.S. at 319. The evidence must be viewed "in the light most favorable to the prosecution." *Id.*

To convict Craft of conspiracy under 21 U.S.C. § 846, "the government was required to prove that there was an agreement to violate the drug laws, and that [Craft] knew of and voluntarily joined the conspiracy." *See United States v. Price*, 258 F.3d 539, 544 (6th Cir. 2001) (citation omitted). "Every member of a conspiracy need not be an active participant in every phase of the conspiracy, so long as he is a party to the general conspiratorial agreement." *United States v. Hernandez*, 31 F.3d 354, 358 (6th Cir. 1994) (citation omitted). "A conspiracy may be inferred from circumstantial evidence that can reasonably be interpreted as participation in the common plan." *United States v. Crayton*, 357 F.3d 560, 573 (6th Cir. 2004), *cert. denied*, 542 U.S. 910, 124 S.Ct. 2857 (2004) (quoting *United States v. Blakeney*, 942 F.2d 1001, 1010 (6th Cir. 1991) (citation omitted)). "[T]he connection between the defendant and the conspiracy need only be slight." *Id.* (citation omitted).

The evidence at trial showed that Smith possessed at least one kilogram of cocaine on September 20, 2002, and that Craft cooked it into crack. This evidence came principally through Craft's statements to the police and the testimony of Bryon Taylor. Given the amount of crack at issue, a rational jury could find beyond a reasonable doubt that Smith was distributing the drugs and that Craft knew this and assisted Smith's efforts by cooking the crack. As such, the jury had sufficient evidence to convict Craft on the conspiracy charge.

### C. The § 851 Enhancement

Next, Craft argues that the district court erred when it enhanced his sentence pursuant to 21 U.S.C. § 851(b), a provision which required the sentencing judge to ask Craft whether he affirmed or denied the conviction listed in the government's April 8, 2004, tender. Craft never objected to the enhancement or the lack of colloquy by the district court. "Before an appellate court can correct an error not raised at trial, there must be (1) error, (2) that is plain, and (3) that affects substantial rights. If all three conditions are met, an appellate court may then exercise its discretion to notice a forfeited error, but only if (4) the error seriously affects the fairness, integrity, or public reputation

of judicial proceedings." *Johnson v. United States,* 520 U.S. 461, 466-67, 117 S.Ct. 1544, 137 L.Ed.2d 718 (1997) (internal citations and quotations omitted).

Craft contends that the district court plainly erred by not engaging him in a § 851(b) colloquy. The contention is unavailing. Craft had an opportunity to review his presentence report, he and his counsel agreed that it accurately stated his prior offenses, and counsel concluded that it properly calculated his criminal history. Thus, even though the district court did not engage Craft in a § 851(b) colloquy, Craft had ample opportunity to contest his prior conviction before his sentence was imposed. Moreover, the district court had no discretion with respect to Craft's sentence as there was a mandatory minimum sentence of 240 months for Craft's offense. Either of these things prevent Craft from establishing plain error as to any § 851(b) violation.

If all of this were not enough, § 851(e) precludes Craft from challenging the validity of any prior conviction which occurred more than five years before the government filed its information pursuant to 21 U.S.C. § 851(a), notifying him that it intended to rely on a 1991 conviction to seek an enhanced sentence. Craft's 1991 conviction occurred more than five years prior to the government's 2004 filing of the § 851(a) notice. The district court did not plainly err in failing to conduct a § 851(b) colloquy because Craft could not have challenged the prior conviction in any event. *See United States v. Hill*, 142 F.3d 305, 313 (6th Cir. 1998) ("neither the statute nor reason 'requires a trial court to adhere to the rituals of section 851(b) where a defendant, as a matter of law [pursuant to § 851(e)], is precluded from attacking the conviction forming the basis of the enhancement information.'") (citing *United States v. Nanez*, 694 F.2d 405, 413 (5th Cir. 1982)); *see also United States v. West*, 130 F.App'x 753, 760 (6th Cir. 2005) ("Requiring the trial court to conduct a colloquy [where the challenged conviction falls outside the five year period under § 851(e)] would be 'elevating form over substance,' contrary to the purposes of § 851.") (citation omitted).

### D. Sixth Amendment

Finally, Craft contends that the district court's use of his prior conviction as an enhancement violates the Sixth Amendment. It is well settled in this Circuit that *Apprendi v. New Jersey,* 530 U.S. 466, 120 S.Ct. 2348, 147 L.Ed.2d 435 (2000), does not require the nature of prior convictions to be determined by a jury. *United States v. Townsend,* 206 F.App'x 444, 451 (6th Cir. 2006); *see also United States v. Beasley,* 442 F.3d 386, 391 (6th Cir. 2006) ("[T]he Supreme Court has uniformly excepted 'the fact of a prior conviction' from its general rule that sentence-enhancing facts must be found by a jury and proved beyond a reasonable doubt."). Accordingly, this last contention also fails.

## V. CONCLUSION

For the foregoing reasons, we AFFIRM the district court.