NOT RECOMMENDED FOR PUBLICATION
File Name: 07a0849n.06
Filed: December 14, 2007

**Nos. 06-2353, 06-2365**

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff-Appellee, | ) | |
| | ) | |
| v. | ) | ON APPEAL FROM THE UNITED |
| | ) | STATES DISTRICT COURT FOR |
| | ) | THE EASTERN DISTRICT OF |
| GINA SOLOMON and ELISE LOVE, | ) | MICHIGAN |
| | ) | |
| Defendants-Appellants. | ) | |

Before:  SILER, MOORE, and GILMAN, Circuit Judges.

**SILER**, Circuit Judge.  Gina Solomon and Elise Love were convicted of bank fraud and

aiding and abetting in violation of 18 U.S.C. §§ 1344 and 2, respectively, and Love was convicted

of three counts of embezzlement by a bank employee in violation of 18 U.S.C. § 656.  They appeal

their convictions on two grounds: (1) the district court erred in admitting evidence of other crimes

pursuant to Federal Rule of Evidence 404(b) and (2) the evidence was insufficient to support their

convictions.  Because these arguments lack merit, we **AFFIRM**.

**I. BACKGROUND**

Love worked as branch manager at the Dearborn, Michigan, branch of Sterling Bank and

Trust (SB&T) in 2002.  Solomon did not work in banking at this time because she was convicted of

bank fraud in 1999, but she came to the branch three or four times per week to visit with Love,

sometimes spending half a day or more there.  They met in 1998 or 1999 when Solomon hired Love

as a bank teller at another bank. Solomon lived with Love and Love's husband in 2002. Solomon believed she would receive a large inheritance from a scam initiated out of Nigeria, and Love believed she would share in the inheritance.

John Murray, who turned 82 in June 2002, opened a money market account with the Springfield branch of SB&T in 1995. Love worked at the Springfield branch before being transferred to the Dearborn branch. The account was inactive through April 2002. Murray's account was transferred to the Dearborn branch when the Springfield branch closed. In 2002, Love used her password to enter a change of address for Murray's bank statement, changing the receipt address from Murray's residence to the Dearborn branch. Three withdrawals totaling $86,000 were made from the account between April 22 and June 1, 2002. The withdrawal slips bore Murray's forged signature. Each withdrawal was converted to a cashier's check signed by Raynita Burke, a teller at SB&T. Solomon deposited each cashier's check in her bank account. Solomon then wired money to a Maryland bank account. She believed she was paying taxes to "release" her inheritance, but the account was being used by perpetrators of the fraudulent scheme.

Murray visited the Dearborn branch on June 13, 2002, because he had stopped receiving his bank statements, and the main bank had informed him the statements were being sent to the Dearborn branch. Love told Murray his statements were not being sent to her branch, and when Murray asked to see his balance, Love produced a false statement, which showed a balance of $93,359.83. Murray returned to the Dearborn branch on August 1 because he had still not received a statement. This time Love was not at her desk, and Murray sought assistance from a teller, who

produced an account statement showing a balance of $7,282.02. SB&T's loss prevention department then began investigating the withdrawals.

At trial, the government introduced evidence pursuant to Rule 404(b) that while working as bank manager at Great Lakes Bank in Dearborn, Solomon fraudulently obtained four cashier's checks totaling $25,000. The money came from the inactive account of a 72-year-old man and was obtained using fraudulent withdrawal slips. Solomon objected to the introduction of the evidence, but the district court ruled the evidence was relevant to the issues of intent, opportunity, and absence of mistake or accident, and that its probative value was not substantially outweighed by the danger of unfair prejudice. Solomon testified Burke loaned her the money she deposited. She testified she had no knowledge of Murray's account and she accepted the money from Burke in good faith. Love testified she did not embezzle money or participate in a scheme to embezzle money. She denied providing Murray with a false statement and testified she would have changed the address for Murray's statement only if there was a proper reason.

The jury found Solomon and Love guilty of all charges. Solomon and Love moved for judgment of acquittal or, in the alternative, for a new trial, and the district court denied those motions.

## II. DISCUSSION

### A. 404(b) Evidence

Rule 404(b) states, in part, "[e]vidence of other crimes . . . is not admissible to prove the character of a person in order to show action in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan,

knowledge, identity or absence of mistake or accident." Fed. R. Evid. 404(b). If Rule 404(b) evidence is admissible for one or more of these "other purposes," the "evidence may still be excluded if its probative value is substantially outweighed by the danger of unfair prejudice." Fed. R. Evid. 403. The evidence of Solomon's prior conviction was relevant to the issues of intent and absence of mistake because the government bore the burden of proving intent to defraud and Solomon testified she acquired the money from Murray's account in good faith. *See United States v. Brown*, 147 F.3d 477, 483 (6th Cir. 1998). The evidence was also relevant to issues of preparation and plan because of the similarities between the crimes. *See United States v. Perry*, 438 F.3d 642, 648 (6th Cir. 2006).

The evidence was probative and prejudicial because it demonstrated Solomon was not acting in good faith and Solomon had participated in a similar crime. This does not make the evidence unfairly prejudicial, however. After viewing the evidence in the light most favorable to the government and maximizing its probative value and minimizing its prejudicial value, the danger of unfair prejudice does not substantially outweigh the evidence's probative value. *See United States v. Carney*, 387 F.3d 436, 451 (6th Cir. 2004). Thus, the district court did not abuse its discretion in admitting evidence of Solomon's prior crime.

## B. Sufficiency of the Evidence

We must examine the evidence in the light most favorable to the government and determine whether "*any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319 (1979); *United States v. Craft*, 495 F.3d 259, 263 (6th Cir. 2007). "'Circumstantial evidence alone, if substantial and competent, may support

a verdict and need not remove every reasonable hypothesis except that of guilt.'" *United States v. Humphrey*, 279 F.3d 372, 378 (6th Cir. 2002) (quoting *United States v. Talley*, 194 F.3d 758, 765 (6th Cir. 1999)). The government presented evidence that: Love managed the Dearborn branch, where Murray's account was held; Love worked as a teller at the Springfield branch, where Murray's account was opened; Love entered a change of address for Murray's statement; Love presented Murray with a false statement; Love was present each day the withdrawals from Murray's account were made; the proceeds of each withdrawal were given to Love's friend and roommate, Solomon; Love expected Solomon to inherit a large sum of money, and Love expected to share in the inheritance; Solomon spent a substantial amount of time at the Dearborn branch and had perpetrated a similar crime; and Solomon deposited the three cashier's checks in her bank account.

Viewing this evidence in the light most favorable to the government, a rational juror could conclude Love was in a position to observe Murray's account and its inactive nature and approve the disbursement of funds. The jury could conclude Love perpetrated the crime with instruction or advice from Solomon, that Love intended to defraud the bank, and that Love did so to ensure Solomon received the inheritance, which Love expected to share in. A rational juror could conclude Solomon intended to defraud, and that she knowingly executed a scheme to obtain money controlled by a financial institution. Thus, the convictions are supported by substantial evidence and Solomon and Love are not entitled to judgment of acquittal or new trials.

**AFFIRMED.**