NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 09a0569n.06

No. 07-3828

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

**FILED**
**Aug 17, 2009**
LEONARD GREEN, Clerk

| | |
|---|---|
| CHAD BEACH, | ) |
| | ) |
| Petitioner-Appellant, | ) |
| | ) |
| v. | ) ON APPEAL FROM THE UNITED |
| | ) STATES DISTRICT COURT FOR THE |
| ERNIE L. MOORE, | ) NORTHERN DISTRICT OF OHIO |
| | ) |
| Respondent-Appellee. | ) |
| | ) |
| | ) |

Before: CLAY and GIBBONS, Circuit Judges; GREER, District Judge.[*]

**JULIA SMITH GIBBONS, Circuit Judge.** Petitioner-appellant Chad Beach appeals the

denial of his petition for a writ of *habeas corpus*. An Ohio jury convicted Beach of aggravated

murder, and he received a sentence of life imprisonment with eligibility for parole after twenty years.

The Court of Appeals of Ohio affirmed his conviction, and the Supreme Court of Ohio denied leave

to appeal. Beach then filed this petition pursuant to 28 U.S.C. § 2254 arguing, *inter alia*, that certain

statements he made to police officers were involuntary and admitted against him in violation of due

process. The United States District Court for the Northern District of Ohio found that Beach's

involuntariness claim was procedurally defaulted and dismissed the petition. For the reasons that

follow, we affirm the judgment of the district court.

_____

[*]The Honorable J. Ronnie Greer, United States District Judge for the Eastern District of
Tennessee, sitting by designation.

I.

The Court of Appeals of Ohio made the following factual findings, which we must presume

to be correct:[1]

> On September 13, 2001, [Beach] was indicted and charged with one count of aggravated murder, in violation of R.C. 2903.01(B), with the specification that he had a firearm . . . . The indictment was filed following the death of Joshua Buck, whose body was discovered in a manhole in a wooded area behind Bowsher High School in Toledo, Ohio on December 26, 1999. Over approximately the next month, [Beach] spoke to police officers investigating the case four times, each time making statements that increasingly showed his involvement in the events surrounding the murder. On January 18 and 24, 2000, [Beach] made statements to Sergeant Steve Forrester and Detective James Scott with his attorney Paul Accettola present. [Beach] was not under arrest and made the statements voluntarily. Thereafter, believing that [Beach] had not been entirely forthcoming in his statement to the officers, Accettola arranged the January 24 interview but asked Lucas County Assistant Prosecutor Weglian for assurances that [Beach] could have a deal. Weglian indicated that if [Beach] was truthful and passed a polygraph exam, then he would be in a position to recommend that [Beach] could plead guilty to a theft offense. That polygraph exam, which was administered on January 25, 2000, resulted in an "inconclusive with probable deception" reading. Thereafter, the state indicated that the most it would be willing to offer [Beach] in terms of a plea bargain was involuntary manslaughter.

> On December 17, 2001, [Beach] filed a motion to enforce plea agreement and a motion to determine the admissibility of statements pursuant to Evid.R. 410. Regarding the alleged plea agreement, [Beach] sought to enforce an agreement to allow him to plead guilty to a theft offense. The lower court held a hearing and denied the motions, concluding that neither of the interviews of January 18 or 24 were induced by a plea agreement. Thereafter, the case proceeded to trial.

> \*     \*     \*

> No where in either of these statements [made on January 18 and 24, 2000] is there any indication that [Beach] was induced to make them with the promise of a plea

---

[1]*See Franklin v. Bradshaw*, 545 F.3d 409, 413 n.3 (6th Cir. 2008). The presumption of correctness may be rebutted by clear and convincing evidence. 28 U.S.C. § 2254(e)(1).

2

> bargain. To the contrary, all indications are that [Beach] made the statements of his own free will. Moreover, Attorney Accettola testified at the motion hearing that no plea negotiations induced the January 18 or 24 statements and that no specific plea negotiations had been undertaken until January 25, 2000. Rather, Accettola testified that "Everything I did was in the furtherance of putting Mr. Beach in a posture that would render him a proper subject for a plea negotiation." In light of the facts surrounding the January 18 and 24 statements, we cannot say that [Beach] had a subjective expectation that a plea was being negotiated. As such, the trial court did not abuse its discretion in allowing the statements to be used as evidence in the trial below.

*State v. Beach*, 2004-Ohio-5232, at ¶¶ 20-21, 43 (Ct. App.). A jury found Beach guilty of the aggravated murder charge, and the trial court sentenced him to a term of life imprisonment with eligibility for parole after twenty years. Beach appealed, raising nine assignments of error including:

> THE TRIAL COURT ERRED TO THE PREJUDICE OF MR. BEACH BY DENYING HIS MOTION TO EXCLUDE STATEMENTS OF THE DEFENDANT MADE IN THE COURSE OF NEGOTIATING A PLEA AGREEMENTS [*sic*] IN VIOLATION OF EVID.R. 410 AND IN VIOLATION OF HIS DUE PROCESS RIGHTS GUARANTEED UNDER THE FIFTH, SIXTH AND FOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTION.

The Court of Appeals of Ohio rejected the above-cited assignment of error, finding that Beach did not have a subjective expectation that a plea was being negotiated under the circumstances. *State v. Beach*, 2004-Ohio-5232, at ¶ 43 (Ct. App.). The court also rejected the eight other assignments of error and affirmed Beach's conviction. Beach then filed a notice of appeal in the Supreme Court of Ohio arguing three propositions of law including:

> Statements made by a criminal defendant to law enforcement officers at the direction of the defendant's criminal defense attorney and in consultation with a prosecutor in the context of plea negotiations are privileged under Evid.R. 410.

The Supreme Court of Ohio summarily denied leave to appeal. *State v. Beach*, 823 N.E.2d 456 (Ohio 2005) (table).

Beach then filed this *habeas corpus* petition in the United States District Court for the Northern District of Ohio, again raising three claims. Relevant to this appeal is his first claim:

> THE PETITIONER'S STATEMENTS TO POLICE WERE INVOLUNTARILY MADE, AND AS SUCH, THEIR ADMISSION DURING TRIAL VIOLATED DUE PROCESS[.]

The matter was referred to United States Magistrate Judge George J. Limbert, who issued a Report and Recommendation concluding that the petition should be dismissed with prejudice. The district court entered an order adopting the Report and Recommendation in its entirety, dismissing the petition with prejudice, and denying a certificate of appealability. A motions panel of this court, however, issued a certificate of appealability on the questions of (I) "whether Beach procedurally defaulted his claim that his statements to police officers were involuntarily made" and (II) "whether such claim states a valid claim of the denial of a constitutional right [*i.e.*, due process]."

## II.

Procedural default is a question of law, which we review *de novo*. *Burroughs v. Makowski*, 411 F.3d 665, 667 (6th Cir. 2005) (*per curiam*).

A federal court may not entertain a petition for a writ of *habeas corpus* unless the petitioner has first exhausted his state court remedies. 28 U.S.C. § 2254(b)(1)(A); *see also Ex parte Royall*, 117 U.S. 241, 252-53 (1886). In order to exhaust his claims, the petitioner "must 'fairly present' his claim in each appropriate state court (including a state supreme court with powers of discretionary review), thereby alerting that court to the federal nature of the claim." *Baldwin v. Reese*, 541 U.S. 27, 29 (2004) (quoting *Duncan v. Henry*, 513 U.S. 364, 365 (1995) (*per curiam*)). If a claim is not fairly presented, and the time to present the claim to the state court has run, then the

claim is deemed procedurally defaulted. *Hicks v. Straub*, 377 F.3d 538, 551 (6th Cir. 2004). We may not review a procedurally defaulted claim unless the petitioner can show cause and actual prejudice or federal court review is necessary "to correct 'a fundamental miscarriage of justice,'" as when the petitioner is actually innocent. *Coleman v. Thompson*, 501 U.S. 722, 748 (1991) (quoting *Engle v. Isaac*, 456 U.S. 107, 135 (1982)).

## A.

In order to preserve his involuntariness claim, Beach must have fairly presented it both to the Supreme Court of Ohio and to the Court of Appeals of Ohio. *See Baldwin*, 541 U.S. at 29. Put differently, if Beach failed to fairly present his claim to either state court, it is unexhausted. We therefore begin by examining his presentation to the Supreme Court of Ohio. If Beach failed to fairly present his claim to that court, our inquiry ends.

A claim is "fairly presented" where the petitioner "asserted both the factual and legal basis for his claim to the state courts." *McMeans v. Brigano*, 228 F.3d 674, 681 (6th Cir. 2000) (citation omitted). There are four ways a petitioner can "fairly present" his claim to the state courts:

> (1) reliance upon federal cases employing constitutional analysis;
> (2) reliance upon state cases employing federal constitutional analysis;
> (3) phrasing the claim in terms of constitutional law or in terms sufficiently particular to allege a denial of a specific constitutional right; or
> (4) alleging facts well within the mainstream of constitutional law.

*Whiting v. Burt*, 395 F.3d 602, 613 (6th Cir. 2005) (paragraph breaks inserted).[2]

---

[2] Contrary to the dissent, there is no indication that *Baldwin* supplanted the four-factor test. *See Dye v. Hofbauer*, 546 U.S. 1, 3-4 (2005) (*per curiam*) (post-*Baldwin* case finding that petitioner fairly presented his federal claim where he cited to four federal cases employing federal constitutional analysis, identified the federal constitutional provisions upon which he relied, and

5

Beach relied upon four cases–three federal and one state–in support of his claim that the statements he made to the police should have been excluded. Each of the cases focuses on the interpretation of Federal Rule of Evidence 410 (or its Ohio counterpart), which governs the admissibility of statements made during plea negotiations. *See United States v. Robertson*, 582 F.2d 1356, 1365-69 (5th Cir. 1978) (adopting two-tiered test to determine admissibility under Fed. R. Evid. 410); *United States v. Swidan*, 689 F. Supp. 726, 727-29 (E.D. Mich. 1988) (applying *Robertson*); *United States v. Gentry*, 525 F. Supp. 17, 19-21 (M.D. Tenn. 1980) (same); *State v. Frazier*, 652 N.E.2d 1000, 1010-1013 (Ohio 1995) (applying *Robertson* to Ohio Evid. R. 410). Nothing in the text of the rule refers to any constitutional right.[3] *See* Fed. R. Evid. 410; Ohio Evid. R. 410. Nor do the cases interpreting it employ any federal constitutional analysis. Consequently, these citations do not support Beach's argument that he fairly presented his federal constitutional claim to the Supreme Court of Ohio.

---

made specific factual allegations of prosecutorial misconduct); *see also Scuba v. Brigano*, 527 F.3d 479, 485-86 (6th Cir. 2007) (post-*Baldwin* case applying four-factor test); *Gonzales v. Wolfe*, 290 F. App'x 799, 810 (6th Cir. 2008) (Clay, J.) (unpublished) (same).

[3]Federal Rule of Evidence 410 provides in relevant part:

Except as otherwise provided in this rule, evidence of the following is not, in any civil or criminal proceeding, admissible against the defendant who made the plea or was a participant in the plea discussions: . . .

(4) any statement made in the course of plea discussions with an attorney for the prosecuting authority which do not result in a plea of guilty or which result in a plea of guilty later withdrawn.

The version of the rule adopted in Ohio is substantially the same. *See* Ohio Evid. R. 410.

As to the third factor, Beach's Table of Contents identified the following proposition of law

for review:

> Statements made by a criminal defendant to law enforcement officers at the direction
> of the defendant's criminal defense attorney and in consultation with a prosecutor in
> the context of plea negotiations are privileged under Evid.R. 410.

While this proposition is factually specific, it is neither phrased in terms of federal constitutional law,

nor does it bring to mind a specific constitutional right. The Argument section of the brief

elaborated on the above-quoted proposition of law as follows:

> It is urged that this Court accept jurisdiction on this issue and find that statements
> made by a criminal defendant to law enforcement officers in the context of plea
> negotiations and at the direction of his counsel are inadmissible under Evid.R. 410
> and the due process clause of the United States Constitution and the Amendments
> Five, Six and Fourteen of the same constitution, as well as the applicable provision
> of the Ohio Constitution.

Thus, the Argument section of Beach's brief *does* allege a denial of a specific constitutional right,

*i.e.*, due process. However, the quoted sentence is the sole reference to federal constitutional law.

"While a petitioner need not cite chapter and verse of constitutional law, general allegations of the

denial of rights to a fair trial and due process do not fairly present claims that specific constitutional

rights were violated." *Slaughter v. Parker*, 450 F.3d 224, 236 (6th Cir. 2006) (internal quotation

marks and citation omitted). The references in Beach's brief are precisely the type of "general

allegations" that we have found do not "fairly present" the substance of a federal claim to a state

court. *See id.* (finding claim of "denial of due process and a fair trial" in violation of "14th and 6th

Amendments" without citation to federal constitutional cases insufficient for fair presentation); *see*

*also Katt v. Lafler*, 271 F. App'x 479, 481 (6th Cir. 2008) (unpublished) (finding claim that

7

admission of hearsay "violated the rules of evidence [and] denied [the petitioner's] constitutional rights to due process and a fair trial. US Const, Ams V, VI, XIV" not sufficient for fair presentation); *Smith v. Tate*, 7 F.3d 235, 1993 WL 339724, at *2 (6th Cir. 1993) (*per curiam*) (unpublished) (finding claim that admission of certain evidence violated Ohio Rules of Evidence and right to a "fair trial" and "due process" insufficient for fair presentation).

The fourth factor is whether Beach has "alleg[ed] facts well within the mainstream of constitutional law." *Whiting*, 395 F.3d at 613. It is well settled that a statement is involuntary, and its admission violates due process, where "the police engaged in objectively coercive activity, the coercive activity was sufficiently severe to overcome the defendant's will and the defendant's statements stemmed from the coercion." *See United States v. Craft*, 495 F.3d 259, 263 (6th Cir. 2007). The element of police coercion is essential to any involuntariness claim. *See Colorado v. Connelly*, 479 U.S. 157, 169-71 (1986). Beach argued in the state court that his statements were inadmissible because he acted *at the direction of his lawyer* and with the belief that his lawyer was negotiating a plea for him. What is missing, however, is any allegation of coercion *by the police*. Without any such allegations, it cannot be said that Beach alleged facts well within the mainstream of federal due process jurisprudence.

None of the four factors support Beach's argument that he fairly presented a federal due process claim to the Supreme Court of Ohio. Consequently, we find that he did not sufficiently alert that court to the federal nature of his claim. *See McMeans*, 228 F.3d at 682. Analysis of his presentation to the Court of Appeals of Ohio is thus unnecessary to conclude that Beach never "fairly presented" his involuntariness claim to the Ohio courts on direct appeal. Moreover, Beach cannot

8

now remedy this failure by raising his involuntariness claim in state post-conviction proceedings because Ohio law does not allow prisoners to raise for the first time on collateral review a claim that could have been brought on direct appeal. *See State v. Szefcyk*, 671 N.E.2d 233, 235 (Ohio 1996). In sum, no state court remedies are available to Beach at this time, and procedural default bars federal review of his involuntariness claim. *See Williams v. Anderson*, 460 F.3d 789, 806 (6th Cir. 2006).

B.

Beach argues in the alternative that his procedural default should be excused because of ineffective assistance of appellate counsel in failing to preserve the involuntariness claim.[4] Ineffective assistance can establish cause for failure to raise a claim on direct appeal. *See Murray v. Carrier*, 477 U.S. 478, 492 (1986). The Warden responds that Beach's ineffective assistance claim is itself procedurally defaulted. *See Edwards v. Carpenter*, 529 U.S. 446, 450-51 (2000).

Here, Beach never raised an ineffective assistance claim in any form in the state courts; therefore, he could not have "fairly presented" it. Because the time for Beach to present the claim to the Ohio courts has run, his ineffective assistance claim is procedurally defaulted. *See* Ohio App. R. 26(B) (motion to reopen based on ineffective assistance of appellate counsel must be filed within 90 days of appellate judgment); *Parker v. Bagley*, 543 F.3d 859, 862 (6th Cir. 2008). Although

---

[4]Beach also argues that federal court review is necessary to correct "manifest injustice" because, in Beach's view, there was no just reason for him to give statements to the police absent a plea agreement. However, this is not the kind of injustice of which *Coleman* speaks. Fundamental miscarriage of justice refers to the conviction of an actually innocent person. *See Schlup v. Delo*, 513 U.S. 298, 316 (1995). Because Beach has not presented any new evidence of innocence, his claim remains barred unless he can show cause and prejudice.

Beach could overcome the procedural default of his ineffective assistance claim by showing cause and prejudice, *see Edwards*, 529 U.S. at 453, he has not shown–or even argued–either prong. Therefore, Beach's ineffective assistance claim is itself procedurally defaulted and cannot excuse the procedural default of his involuntariness claim.

III.

Even were we to reach the merits, we would find that Beach's federal constitutional claim is so "plainly meritless [that] it would be a waste of time and judicial resources" to hold an evidentiary hearing. *See Lyons v. Stovall*, 188 F.3d 327, 333 (6th Cir. 1999).

We review the denial of a petition for a writ of *habeas corpus de novo*. *Burton v. Renico*, 391 F.3d 764, 770 (6th Cir. 2004). Beach filed this petition pursuant to 28 U.S.C. § 2254 after the enactment of the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), Pub. L. No. 104-132, 110 Stat. 1214. Therefore, AEDPA's now-familiar standards apply to this case. *See Woodford v. Garceau*, 538 U.S. 202, 210 (2003). Ordinarily, AEDPA limits our review of the Ohio courts' resolution of Beach's claims. Where, however, a state court has not passed on the merits of the claim, there is no state court decision to which AEDPA deference would attach. *Hawkins v. Coyle*, 547 F.3d 540, 546 (6th Cir. 2008). In that case, we review the claim *de novo*. *Morales v. Mitchell*, 507 F.3d 916, 929 (6th Cir. 2007). Nonetheless, a presumption of correctness attaches to any factual findings made by the state court. *Matthews v. Ishee*, 486 F.3d 883, 891-92 (6th Cir. 2007).

Here, the Court of Appeals of Ohio made the following findings with respect to the admissibility of the January 18 and 24, 2000 statements:

> [Beach] contends [that the January 18 and 24, 2000 statements] were made in the course of negotiating a plea agreement and, therefore, were inadmissible pursuant to Evid.R. 410. . . . No where in either of these statements is there any indication that [Beach] was induced to make them with the promise of a plea bargain, to the contrary, *all indications are that [Beach] made the statements of his own free will.* . . . In light of the facts surrounding the January 18 and 24 statements, we cannot say that [Beach] had a subjective expectation that a plea was being negotiated. As such, the trial court did not abuse its discretion in allowing the statements to be used as evidence in the trial below.

*Beach*, 2004-Ohio-5232, at ¶¶ 37, 43 (emphasis added). Thus, the state court found that Beach's statements were voluntary within the meaning of the Ohio Rules of Evidence, but it did not reach the due process question. Arguably, the state court's finding of voluntariness could be a legal conclusion entitled to AEDPA deference in relation to a due process claim. Even applying *de novo* review, however, Beach's involuntariness claim fails, as demonstrated below.

Beach argues that his statements were involuntary under the Due Process Clause of the Fifth Amendment to the United States Constitution. Whether a statement is involuntary depends upon the totality of the circumstances. *See United States v. Fowler*, 535 F.3d 408, 416 (6th Cir. 2008). A statement is involuntary if "(i) the police activity was objectively coercive; (ii) the coercion in question was sufficient to overbear the defendant's will; and (iii) the alleged police misconduct was the crucial motivating factor in the defendant's decision to offer the statement." *United States v. Rutherford*, 555 F.3d 190, 195 (6th Cir. 2009) (quoting *United States v. Mahan*, 190 F.3d 416, 422 (6th Cir. 1999)). In certain circumstances, illusory "promises of leniency[] coupled with threats of immediate imprisonment" may be so coercive as to violate due process. *See Williams v. Withrow*, 944 F.2d 284, 290 (6th Cir. 1991), *rev'd in part on other grounds*, 507 U.S. 680 (1993). However, not all offers of leniency are coercive. *See Craft*, 495 F.3d at 263-64.

Here, Beach contends that his statements were coerced because the police "informed [Beach] that in exchange for his testimony, he would be offered a plea to a theft offense." However, several factual findings made by the Court of Appeals of Ohio foreclose this argument. We, of course, must presume those factual findings to be correct. *See* 28 U.S.C. § 2254(e)(1). First, the court found that Beach "made the statements of his own free will." This finding directly contradicts any claim that Beach's will was overborne. *See Rutherford*, 555 F.3d at 198. Second, the court credited the testimony of Beach's attorney, Paul Accettola, that plea negotiations did not begin until January 25, 2000, the day *after* the second of the two challenged statements was made. If Beach gave the statements *before* he received the alleged promise of leniency, then he could not have relied upon the promise in making the statements. It follows that the promise was not the motivating factor in Beach's decision to make the statements. *See Craft*, 495 F.3d at 263-64. Finally, the court determined that Beach did not have a subjective expectation that a plea was being negotiated. Because Beach lacked the subjective belief that plea negotiations were in progress, plea negotiations could not have induced him to make the statements. Again, the lack of a causal connection between the alleged promise of leniency and Beach's decision to make the statements is fatal to Beach's claim that the promise was coercive. *See id.*

Even if the offer had been extended before Beach made the statements, that circumstance alone would fall far short of the rare case in which we have found coercion based upon a promise of leniency. *See Williams*, 944 F.2d at 289-90; *see also United States v. Johnson*, 351 F.3d 254, 261-62 (6th Cir. 2003) (noting that "almost all of these claims [brought pursuant to *Williams*] have been rejected" and collecting cases). In *Williams*, two police officers went to the defendant's house,

12

searched his person, took him to the police station in their vehicle, and repeatedly threatened him with immediate arrest if he did not speak. *See* 944 F.2d at 289. These facts stand in stark contrast to the instant case. Beach, unlike the defendant in *Williams*, was not in custody at the time he made the statements. To the contrary, the January 24 interview took place at his attorney's office and at his attorney's suggestion. Accettola was present both for that interview and for the January 18 meeting. Moreover, Beach has not argued that he faced any threat of immediate arrest if he did not speak. Under the totality of the circumstances, any offer of leniency simply was not coercive.

## IV.

For the foregoing reasons, we find that Beach's involuntariness claim was procedurally defaulted. We therefore affirm the judgment of the district court.

**CLAY, Circuit Judge, dissenting.** Established Supreme Court precedent clearly provides that citing the federal source of law underlying a federal claim or labeling a claim as "federal" is sufficient to fairly present a federal constitutional claim to a state court for purposes of exhaustion in the context of federal habeas review. Because Beach indicated the federal nature of his claim in his submissions to the Ohio courts, he fairly presented his claim that the admission of his statements to police violated his due process rights. On the merits of his claim, unresolved factual issues remain as to whether police falsely promised Beach a plea to a theft offense in exchange for the statements at issue. As a result, I would remand the case to the district court to conduct an evidentiary hearing on Beach's due process claim. Because I disagree with the majority's conclusion that the district court's judgment should be affirmed, I respectfully dissent.

The majority finds that Beach failed to fairly present his claim that his statements to police officers were involuntary. However, it is clear from Beach's brief to the Ohio Court of Appeals and his petition for review to the Ohio Supreme Court that Beach presented the claim that the trial court's decision to admit the statements he made to police on January 18, 2000 and January 24, 2000 violated his due process rights. On direct appeal, Beach argued:

> The trial court erred to the prejudice of Mr. Beach by denying his motion to exclude statements of the defendant made in the course of negotiating a plea agreements [sic] in violation of [Rule 410 of the Ohio Rules of Evidence] and in violation of his due process rights guaranteed under the Fifth, Sixth and Fourteenth Amendments to the United States Constitution.

(J.A. 85.) Beach further contended that because the trial court erred in admitting the statements, a new trial was necessary "to protect [his] due process rights as guaranteed under the fifth, sixth, and fourteenth amendments to the United States constitution [sic] and the corresponding portions of the Ohio constitution." (J.A. 103.) Similarly, in petitioning for discretionary review in the Ohio Supreme Court, Beach argued that the statements he made to police were "inadmissible" under "the due process clause of the United States Constitution and the Amendments [sic] Five, Six, and Fourteen of the same constitution." (J.A. 201.)

These arguments fairly presented to the Ohio courts Beach's claim that the trial court violated his due process rights by admitting into evidence statements allegedly obtained by police coercion based on false promises of leniency. The Supreme Court has stated that "[a] litigant wishing to raise a federal issue can easily indicate the federal law basis for his claim . . . by citing in conjunction with the claim the federal source of law on which he relies . . . or by simply labeling the claim 'federal.'" *Baldwin v. Reese*, 541 U.S. 27, 32 (2004). Thus, a petitioner need only label his claim as "federal" or cite "the federal source of law" in connection with his claim. *Baldwin*, 541 U.S. at 32; *see Stuart v. Wilson*, 442 F.3d 506, 514 (6th Cir. 2006) (finding that the petitioner fairly presented his claim because the "[p]etitioner stated that his claim as to the admission of the hearsay statements was based in part on the United States Constitution"); *Daniels v. Lafler*, 192 F. App'x 408, 418 (6th Cir. 2006) (concluding that the petitioner "definitively placed a federal label on both his impeachment and hearsay claims" by arguing that the trial court's error "was not merely evidentiary" but also

"negatively impacted on defendant's constitutional right to a fair trial").[1] In his state court briefs, Beach argued that the admission of the statements to police was contrary to the federal due process clause, invoking the federal source of law of his involuntariness claim. Beach also cited the specific federal constitutional amendments relevant to his due process claim, further identifying his claim regarding the trial court's admission of his statements as a federal one.

Moreover, as required by this Court's decision in *Newton v. Million*, 349 F.3d 873 (6th Cir. 2003), Beach properly set forth the factual and legal basis for his federal habeas claim. *See id.* at 877. First, regarding the factual basis of his claim, Beach stated that the trial court erroneously admitted the statements that he made to police officers during the interviews of January 18, 2000 and January 24, 2000. Beach also identified the allegedly false and coercive promise—a plea to a fourth-degree felony theft offense. With respect to identifying the legal basis of his claim, Beach argued that the trial court's decision to admit his statements violated his federal due process rights.

---

[1]The majority attempts to undermine the impact of *Baldwin* by arguing that *Baldwin* did not "supplant[] the four-factor test" applied in this Circuit in assessing whether a petitioner fairly presented his claim to the state courts. (Majority Op. at 5 n.2.) While several cases decided after *Baldwin* have listed these four factors as considerations relevant to the fair-presentation inquiry, the actions listed are only relevant or "significant" to—not determinative of—the ultimate inquiry of whether a petitioner asserted the factual and legal basis of his claim. *See Whiting v. Burt*, 395 F.3d 602, 613 (6th Cir. 2005). Further, to the extent the majority suggests that the four-factor test controls to the exclusion of the Supreme Court's instruction in *Baldwin* that a petitioner may cite "the federal source of law on which he relies," we are bound by *Baldwin*. *See Johnson v. City of Cinncinnati*, 310 F.3d 484, 501 (6th Cir. 2002). Moreover, contrary to the majority's implication, *Dye v. Hofbauer*, 546 U.S. 1 (2005) (*per curiam*), does not set forth a four-factor test that courts must apply. Instead, in reversing the determination below that the petitioner had failed to fairly present his claim, the Supreme Court noted that the case was not one where the petitioner failed to "apprise the state court" that the claim was "based, at least in part, on a federal right." *Id.* at 4. To support its holding, the Supreme Court noted the petitioner's citation of federal case law and constitutional provisions—it did not impose a rigid four-factor test. *Id.*

16

Additionally, even though Beach was not required to cite the specific constitutional provision under which his claim arose, *see id.*, Beach asserted that the admission of his statements violated the Fifth and Fourteenth Amendments of the United States Constitution.

Because Beach set forth both the factual and legal basis for his federal habeas claim in the state courts, and clearly labeled his claim as "federal," *see Baldwin*, 541 U.S. at 32, he has fairly presented his claim for purposes of federal habeas review. I would therefore conclude that the district court erred in finding that Beach's involuntariness claim is procedurally defaulted.[2]

I also disagree with the majority's conclusion that requiring an evidentiary hearing on the merits of Beach's claim that his statements were coerced by false promises of leniency would be a "waste of time and judicial resources." (Majority Op. at 10.) Beach argues that his "will was overborne by promises from investigating agents" that he could plead to a theft offense in exchange for his statements on January 18, 2000 and January 24, 2000. Specifically, Beach asserts that "Accettola and Weigian [sic] had conversations in which Accettola offered a statement from [Beach] . . . in exchange for a plea to a theft offense. [Beach] agreed to this arrangement, and subsequently met with detectives on a couple of occasions, providing them with information." (J.A. 15). Beach alleges that, in his meetings with officers on "January 19 [sic] and January 24, . . . . [Beach] was informed that in exchange for his testimony, he would be offered a plea to a theft offense," and "[i]t was solely on this basis that [Beach] made a statement." (Pet'r Br. 20.)

---

[2]Because Beach fairly presented his involuntariness claim to the state courts, it is unnecessary to address, as the majority does, Beach's argument that the ineffective assistance of appellate counsel excuses the procedural default of his involuntariness claim.

"[P]romises of leniency may be coercive if they are broken or illusory." *United States v. Johnson*, 351 F.3d 254, 262 (6th Cir. 2003). "[W]hen promises of leniency . . . have a coercive effect on a suspect, we are obliged to inquire whether the coercion in question was sufficient to overbear the will of the accused." *Id.* at 261 (quoting *Williams v. Withrow*, 944 F.2d 284, 289 (6th Cir. 1991)). Here, it is unclear from the record whether police offered Beach a plea to a theft offense in exchange for his statements on January 18, 2000 and January 24, 2000. Although there is evidence that police did not promise Beach a plea to a theft offense until January 25, 2000, the day after Beach made the statements that he claims were coerced with a promise that he could plead to a fourth-degree felony theft-offense, there is also evidence to the contrary. For example, a portion of Accettola's testimony during the state evidentiary hearing suggests that Beach was aware of the possibility of a polygraph test, a condition of the alleged plea agreement, prior to making the statements at issue. Specifically, Accettola testified that, during the interview with police on January 18, 2000, he encouraged Beach to be more forthcoming with police. In response, Beach "assur[ed] [him that] he will [tell the truth] when he takes the polygraph." (J.A. 292.)

Based on these unresolved factual issues regarding whether police offered Beach a plea to a theft offense in exchange for his statements on January 18, 2000 and January 24, 2000, the record is insufficient for this Court to determine whether Beach's statements were involuntary based on police coercion in making false promises of leniency. Accordingly, I would remand this case to the district court, with instructions to conduct an evidentiary hearing so that a more fully developed record can be made which would allow this Court to conduct meaningful appellate review of the

18

merits of Beach's habeas petition. I therefore respectfully dissent from the majority's decision to

affirm the judgment of the district court dismissing Beach's habeas petition.